### In re BOTHE.

(Circuit Court of Appeals, Eighth Circuit. October 11, 1909.)

#### No. 95.

1. CHATTEL MORTGAGES (§ 47*)—VALIDITY—DESCRIPTION OF PROPERTY.

A chattel mortgage on property described only as "five wagons," when the mortgagor owned more than five wagons, is void for insufficiency of description.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 100; Dec. Dig. § 47.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKRUPTCY (§ 278*)—RIGHTS OF TRUSTEE—ENFORCEMENT OF EQUITIES OF SPECIAL CREDITORS.

A trustee in bankruptcy represents all persons interested in the estate, and may enforce in the court of bankruptcy equitable rights existing in favor of certain of the creditors only.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 418; Dec. Dig. § 278.*]

3. CHATTEL MORTGAGES (§ 197*)—MISSOURI STATUTE—EFFECT OF FAILURE TO RECORD.

Under Rev. St. Mo. 1899, § 3404 (Ann. St. 1906, p. 1936), which provides that a chattel mortgage shall be void against any other person than the parties thereto unless possession of the property is taken by the mortgagee or the ·mortgage is recorded, as construed by the appellate courts of the state, creditors of a mortgagor who became such after the mortgage was given, but before it was recorded, have equities superior to those of the mortgagee, and the mortgage remains void as to them, although subsequently recorded, and although they have acquired no title to or lien upon the property.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 429–433; Dec. Dig. § 197.*]·

Petition to Revise Decree of the District Court of the United States for the Eastern Division of the Eastern District of Missouri, in Bankruptcy.

In the matter of Lawrence Martin, bankrupt. On petition by George Bothe to revise an order holding a chattel mortgage invalid as to certain creditors. Petition dismissed.

On June 2, 1906, Lawrence Martin executed and delivered to George Bothe a chattel mortgage, conveying to him certain personal property, including five wagons, to secure him against liability on an indorsement then made for Martin's accommodation. The mortgaged property remained in the possession of the mortgagor, and the mortgage itself was not recorded, until June 4, 1907. Between the execution of the mortgage and its recording Martin became indebted to several persons for merchandise purchased of them, and subsequently on January 25, 1908, filed a petition upon which he was adjudicated a bankrupt. On February 5, 1908, Bothe filed a petition with the referee praying for the possession of the mortgaged property, claiming title thereto by virtue of his mortgage. Pending a hearing and determination of this petition, the court ordered a sale of the mortgaged chattels free of liens. This sale was made, and the proceeds were held subject to the same liens and preferential rights as the property itself had been. The mortgagee claimed them by virtue of his mortgage, and the referee and the court below decided that the mortgage was absolutely void in so far as it attempted to convey the five wagons, and as to creditors of the bankrupt who extended credit ·to the bankrupt after the execution of the ·mortgage, and before it was recorded, that it was also invalid in respect of all the property attempted to be conveyed. This is a petition by the mortgagee for review, challenging that decision.

Charles H. Franck (A. M. Frumberg, on the brief), for petitioner.
L. L. Leonard, for respondent.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

ADAMS, Circuit Judge (after stating the facts as above). The court below was clearly right in holding the mortgage inoperative and void as to the five wagons. It appears without contradiction that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Martin had six wagons of various kinds at the time he executed the mortgage. The only description of those conveyed was "five wagons." There was no segregation of any particular five wagons from the larger number owned by Martin, and no means were disclosed, in the mortgage or otherwise, for determining which of them were intended to be conveyed. For want, therefore, of a sufficient description to identify the property intended to be conveyed, the mortgage was void as to the wagons.

The mortgage was recorded more than four months prior to the adjudication in bankruptcy, and therefore, so far as the bankruptcy act was concerned, it created a valid preferential right over all other creditors of the bankrupt. But by the law of Missouri (section 3404, Rev. St. 1899 [Ann. St. 1906, p. 1936]), where the mortgage was made, it became and was invalid against any other person than the parties thereto until it was recorded. No question of lawful or unlawful preference within the contemplation of the bankruptcy act is now presented. The sole inquiry is whether the property in question, prior to the bankruptcy proceedings, belonged to the mortgagee or to the creditors of the bankrupt who extended credit to him, after the execution of the mortgage and before it was recorded. No other creditors assert any claim to it.

The trustee in bankruptcy stands for and represents all persons interested in the estate of the bankrupt. In this case, doubtless moved so to do by the interested creditors, he seeks to assert an equitable right in favor of certain special creditors to a part of the bankrupt's estate as against the holder of a chattel mortgage purporting to convey it to one creditor. The rights of these special creditors rest on the principle of estoppel, and are no less enforceable in the bankruptcy court than they would be if they had their origin in written contract. Equitable rights, no less than legal, are there enforced. Atchison, Topeka & S. F. Ry. Co. v. Hurley, 153 Fed. 503, 82 C. C. A. 453, s. c. 213 U. S. 126, 29 Sup. Ct. 466, 53 L. Ed. 729. The mortgagee, Bothe, by leaving the property in the possession of the bankrupt and withholding the mortgage from the record, invited others to deal with the bankrupt on the assumption of his ownership of an unincumbered title to the property conveyed. Whether those so dealing with him were actually deceived or not is immaterial. The inevitable tendency was to mislead and deceive, and the presumption must be indulged that they were misled to their injury. Landis v. McDonald, 88 Mo. App. 335; Harrison & Calhoun v. South Carthage Min. Co., 95 Mo. App. 80, 68 S. W. 963, and cases cited.

As between the mortgagee and those dealing with and extending credit to the mortgagor subsequent to the date of the mortgage and prior to the recording of it, there is an obvious equity in favor of the latter. It was doubtless in recognition of this equity that the provisions of section 3404 were enacted into positive law. That section has been the subject of much consideration by the appellate courts of Missouri; and this court, in the recent cases of First Nat. Bank of Buchanan County v. Connett, 142 Fed. 33, 37, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148, and McElvain v. Hardesty (C. C. A.) 169 Fed. 31, considered the

Missouri cases and undertook to follow the interpretation placed upon the statute by them. In the former, speaking by Judge Hook, we said:

"The Missouri statute provides that no mortgage of personal property shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage be recorded in the county in which the mortgagor resides. The sweeping character of its provisions at once attracts attention. Under this statute it has been held that where possession is not taken an unrecorded chattel mortgage is fraudulent and void in law as to every one, excepting trespassers, parties to the instrument, and general creditors whose demands arose prior to the time it was given; nor as to such prior creditors' is it valid if by proceedings in court or otherwise they have secured a lien upon the property before it is recorded. Such a mortgage is also utterly void as to simple contract creditors who extended credit after it was given, and who have secured no title or lien by purchase, execution, attachment, or otherwise. As to them the subsequent recording of the instrument is of no effect. It cannot be asserted against the enforcement of their demands."

We perceive no reason for departing from this deliberate declaration, and we accordingly adhere to the conclusion there expressed.

Detached expressions are found in Harrison & Calhoun v. South Carthage Min. Co. and Landis v. McDonald, supra, to the effect that, if "a prior creditor" fails to obtain some specific lien by attachment, execution, or otherwise on the mortgaged property before the mortgage is actually recorded, the mortgage is by the act of recording validated as to such creditor, and his right is subordinated to the rights of the mortgagee; and counsel for the mortgagee seize on expressions of this kind and claim that, because the special creditors in this case failed to take steps to fix a lien upon the mortgaged property before the mortgage was recorded, their rights were lost. We cannot give our assent to this claim. Until the mortgage was recorded it was absolutely void as to these special creditors. Their superior rights arose against the property of their debtor while the mortgage was thus void, and to hold that such rights were lost before they had an opportunity to assert them, before they even knew of the existence of the mortgage, is a palpable absurdity. We find nothing in the cases referred to to justify any such contention. The words "prior creditors," there referred to, clearly relate to creditors whose claims antedated the execution of the mortgage. This is apparent, not only from the opinions taken as a whole, but from other cases there cited and relied on. Such creditors, who parted with nothing on the faith of their debtor's ostensible ownership of unincumbered property, are required to take some step to fix a lien upon the mortgaged property prior to the recording of the mortgage in order to secure an equitable standing. Until then they have no equitable right or claim enforceable in a court of equity. On the contrary, creditors who extend credit to the mortgagor after the execution of the mortgage and before it is recorded have, as already seen, a clear equitable right, inhering in the transaction itself, superior to the mortgagee, and this right entitles them to relief without the necessity of fixing a lien as a prerequisite. This distinction, we think, is clearly recognized in the Missouri cases relied upon by counsel, and was distinctly recognized and applied by us in First Nat. Bank of Buchanan County v. Connett, where we said:

"Such a mortgage is also utterly void as to simple contract creditors who extended credit after it was given, and who have secured no title or lien by purchase, execution, attachment, or otherwise. As to them the subsequent recording of the instrument is of no effect. It cannot be asserted against the enforcement of their demands."

The trial court held that the proceeds of the property sold should be distributed ratably between the creditors whose claims accrued after the execution of the mortgage and before it was recorded, and also held that the claim of the mortgagee in this case had the same equitable standing as the other claimants, and should participate ratably with them in the distribution of the proceeds of the property. The trustee does not challenge that feature of the order, and hence it needs no consideration.

We think the mortgagee was accorded all the rights he had; and, finding no error in the proceedings in the trial court, this petition for review is dismissed.