STURDIVANT BANK v. SCHADE.

(Circuit Court of Appeals, Eighth Circuit. February 27, 1912.)

No. 3,665.

1. CORPORATIONS (§ 440*)—DEED OF TRUST—EQUITABLE MORTGAGE.

A corporation having been organized by the president of another corporation, certain land was conveyed to it, and it executed a deed of trust

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to secure certain notes to the grantor corporation which the president transferred to claimant bank as collateral to an indebtedness owing by the payee of the notes and beneficiary of the deed. *Held* that, though the creation of such corporation and the execution and delivery of the deed of trust was a mere paper transaction, it would nevertheless be sustained as an equitable mortgage in favor of the bank to the extent of the amount of the collateral notes pledged to it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1775–1777; Dec. Dig. § 440.*]

**2.** MORTGAGES (§ 233*)—COLLATERAL NOTES—RIGHTS OF PLEDGEE.

A pledge of collateral notes secured by a trust deed to a bank in equity vested in the bank whatever interest the pledgor had in the trust deed, and the transfer of the collateral notes and a delivery of the trust deed to the bank constituted an equitable assignment thereof.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 618, 619; Dec. Dig. § 233.*]

**3.** BANKRUPTCY (§ 161*)—PLEDGES—PREFERENCE.

Where a transfer of collateral notes secured by a trust deed was made to a bank as collateral security for a present loan, it was neither fraudulent nor a voidable preference under Bankruptcy Act July 1, 1898, c. 541, § 60ab, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), not having been made within four months before the filing of the petition in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. § 161.*]

**4.** MORTGAGES (§ 231*)—ASSIGNMENT—PLEDGE—"INSTRUMENT AFFECTING REAL ESTATE"—RECORD.

A pledge of notes secured by a trust deed executed by a corporation to a bank as collateral security for a loan to the payee of the notes, not being in writing, was not within Rev. St. Mo. 1909, § 2809, requiring record of any instrument in writing by which real estate may be affected.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 599; Dec. Dig. § 231.*]

**5.** BANKRUPTCY (§ 303*)—PLEDGES—SECURED CLAIMS.

Where notes secured by a trust deed were pledged to a bank by bankrupt as collateral to the bankrupt's debt to the bank, the burden was on the bank as against the bankrupt's trustee in order to establish its right to the security to prove the validity of the trust deed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.*]

**6.** PRINCIPAL AND AGENT (§ 29½*)—TERMINATION OF AGENCY.

The president of a corporation to which certain notes secured by a trust deed of another corporation had been executed obtained a loan from a bank on delivering the notes and trust deed as collateral. The trust deed, not having been recorded, was delivered by the bank to the president of the corporation, with instructions to have the same recorded, but he, on conversing with his counsel, elected not to do so without informing the bank thereof. *Held,* that the president of the corporation ceased to be the agent of the bank for the purpose of recording the deed of trust from the time he determined not to record the deed, and the bank was not thereafter chargeable with his acts or knowledge.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 29½.*]

**7.** BANKRUPTCY (§ 188*)—TRANSFERS—RECORDING OF INSTRUMENTS—DUTY OF PLEDGEE.

Where notes secured by a deed of trust executed by a corporation were pledged to a bank as security for a loan to the payee of the notes secured by the deed of trust, the bank accepting such instruments as security was under no legal duty to see that a deed executed to the grantor cor-

poration conveying to it the land covered by the deed of trust was re-corded.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–295; Dec. Dig. § 188.*]

8. BANKRUPTCY (§ 188*)—TRUSTEE—AUTHORITY.

Where a bankrupt's trustee was in possession of certain real property on which petitioner claimed a lien, the trustee by virtue of Bankr. Act July 1, 1898, c. 541, § 47a, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), must be deemed a creditor holding a lien thereon by legal or equitable pro-ceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–295; Dec. Dig. § 188.*]

9. COURTS (§ 367*)—FEDERAL COURTS—RULES OF DECISION.

On the question whether under the statute of a state an unrecorded deed to real property is valid as against creditors of the grantor, the federal courts in bankruptcy are bound by the decisions of the highest courts of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

10. BANKRUPTCY (§ 188*)—LIEN—TRUST DEED—RECORD—STATE STATUTES.

Rev. St. Mo. 1909, §§ 2809, 2811, provided that any instrument in writ-ing whereby any real estate may be affected shall be recorded in the of-fice of the recorder of the county in which the real estate is situated, and no such instrument in writing shall be valid except between the parties and such as have actual notice, until it shall be deposited with the re-corder for record. *Held,* that such sections having been construed by the Supreme Court of Missouri not to apply to an unrecorded deed as against creditors of the grantor, if recorded before an execution sale under a judgment, where an unrecorded deed of trust securing certain notes was transferred to a bank as collateral by the bankrupt, and the deed of trust and the deed conveying the property to the grantor in the trust deed were recorded before the property was sold by the bankrupt's trustee, the bank's claim of lien under the deed was superior to the right of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–295; Dec. Dig. § 188.*]

.Appeal from the District Court of the United States for the East-ern District of Missouri.

In the matter of bankruptcy proceedings of the Jackson Brick & Tile Company. From an order of the District Court affirming an or-der of the referee in bankruptcy allowing the claim of the Sturdivant Bank as an unsecured claim, and denying the bank's prayer that the claim be allowed as a secured claim, it appeals. Reversed, with in-structions.

This is an appeal from an order of the United States District Court for the Eastern District of Missouri affirming an order of the referee in bankrupt-cy which allowed the claim of the Sturdivant Bank as an unsecured claim against the estate of the Jackson Brick & Tile Company, a bankrupt, and de-nied the prayer of the bank that its claim be allowed as a secured claim. The Sturdivant Bank presented its claim against the Jackson Brick & Tile Com-pany to the referee for allowance in the sum of $15,410, and set forth in said claim that it held as security for said indebtedness 25 promissory notes, each for the sum of $500, executed by the Jackson Chemical Manufacturing Company, and secured by a deed of trust also executed by said company

upon 117 acres of land. and also upon two lots in Cape Girardeau county, Mo. The facts upon which the validity of the security claimed by the bank depends. as found by the referee and the District Court, are as follows:

The English Mining & Manufacturing Company was incorporated under the laws of Missouri in April, 1897, and in December, 1902, changed its name to the Jackson Brick & Tile Company. From the time of its original incorporation until 1906 it was engaged in the business of manufacturing brick, fire brick, and drain tile near Jackson, Mo., and had a manufacturing plant and certain lands in that locality. Henry R. English was the organizer and principal stockholder in the company, and during the time above mentioned was its president, and in complete control of its affairs.

On September 12, 1902, Henry R. English caused a corporation to be organized under the laws of Missouri by the name of the Jackson Chemical Manufacturing Company, with a purported fully paid capital stock of $20,000. No part of this capital, however, was ever paid in, and the company seems to have been incorporated by English for the purpose of borrowing money for the English Mining & Manufacturing Company, above mentioned, as it never transacted any business with the exception of the execution of the deed of trust hereinafter mentioned.

Immediately upon the incorporation of the Jackson Chemical Manufacturing Company, the English Mining & Manufacturing Company executed a warranty deed dated September 12, 1902, conveying to the Jackson Chemical Manufacturing Company 117 acres of land and two lots in Cape Girardeau county, Mo., for the expressed consideration of $15,000. The deed was acknowledged by English as president of the English Mining & Manufacturing Company on September 18, 1902, and, after being so acknowledged, was left by English in the possession of one Limbaugh, the notary who took the acknowledgment, and the deed remained in the possession of the notary for several months, and was then returned by the notary to English, who placed it in his box in the vault of the Jackson Exchange Bank, at Jackson, Mo., where it remained until July, 1906, when it was taken out and afterwards recorded as hereinafter stated.

On September 16, 1902, the Jackson Chemical Manufacturing Company executed a deed of trust, whereby it conveyed the 117 acres of land and the two lots. being the same property described in the warranty deed before mentioned, to one Henry L. Jones. as trustee, to secure the payment of 25 promissory notes for the sum of $500 each, executed by the said Jackson Chemical Manufacturing Company and payable five years after date to the English Mining & Manufacturing Company. English was the president of both companies. and controlled and managed their affairs. He executed and acknowledged. as president, each of the above-mentioned instruments.

On December 4, 1902, the English Mining & Manufacturing Company borrowed $8,500 from the Sturdivant Bank, and pledged to the bank as collateral security for the loan the 25 notes of the Jackson Chemical Manufacturing Company before mentioned. In negotiating this loan, the English Mining & Manufacturing Company was represented by Henry R. English, who informed the bank that the notes were secured by a deed of trust upon certain lands formerly owned by the English Mining & Manufacturing Company, and that said company had conveyed said lands to the Jackson Chemical Manufacturing Company by warranty deed. At the time the loan was obtained from the Sturdivant Bank, Henry R. English forwarded to the bank by mail the deed of trust executed by the Jackson Chemical Manufacturing Company to secure the collateral notes, and requested that the bank return the deed of trust to him, saying that he would have the same recorded. The Sturdivant Bank on December 4, 1902, mailed the deed of trust to English and requested him to place it of record.

The English Mining & Manufacturing Company from time to time renewed the note, evidencing the debt owing by it to the Sturdivant Bank, and prior to October 16, 1905, increased its debt to the bank by borrowing additional money to the sum of $15,000, for which the Sturdivant Bank held as collateral security the 25 notes executed by the Jackson Chemical Manufacturing Company, and secured by the deed of trust hereinbefore mentioned. When the deed of trust executed by the Jackson Chemical Manufacturing

Company was returned by the Sturdivant Bank to Henry R. English, on December 4, 1902, English did not file the deed for record, but placed it in his box in the vault of the Jackson Exchange Bank, where it remained until some time in July, 1906, when it was taken out and recorded as hereinafter stated. English testified that the reason he did not record the warranty deed from the English Mining & Manufacturing Company to the Jackson Chemical Manufacturing Company, and the deed of trust from the latter company to Jones, as trustee, was that he, English, was advised by his attorney not to do so, that he thought the recording of the instrument might affect the interests of the Jackson Exchange Bank, of which he was president, and that he was at the time negotiating with parties in St. Louis to secure money, and expected to take up the loan in a short time.

About July 19, 1906, the Sturdivant Bank learned that the Jackson Brick & Tile Company was in financial difficulties and unable to proceed with its business; that the deed from the English Mining & Manufacturing Company to the Jackson Chemical Manufacturing Company, and the deed of trust from the Jackson Chemical Manufacturing Company to Jones, trustee, had never been recorded; and that the Jackson Brick & Tile Company owed about $69,000, and was insolvent.

On August 8, 1906, Mr. Miller, the attorney of the Jackson Brick & Tile Company, filed for record the deed from the English Mining & Manufacturing Company to the Jackson Chemical Manufacturing Company, and the deed of trust of the Jackson Chemical Manufacturing Company to Jones trustee. On October 31, 1906, the Jackson Brick & Tile Company was adjudicated a bankrupt on the petition of creditors, filed October 8, 1906. Over $25,000 of the total indebtedness of the bankrupt arose after the Sturdivant Bank had received the collateral notes delivered to it by the Jackson Brick & Tile Company and before the recording of the deeds above mentioned.

Henry R. English, president of the Jackson Brick & Tile Company, withheld the warranty deed from the English Mining & Manufacturing Company to the Jackson Chemical Manufacturing Company, and the deed of trust from the latter company to Jones, trustee, from record, in order that the Jackson Brick & Tile Company might obtain credit upon its apparent ownership of the property described in such conveyances. The debt due from the Jackson Brick & Tile Company to the Sturdivant Bank was created in good faith, and the bank gave a present cash consideration for the collateral notes secured by deed of trust from the Jackson Chemical Manufacturing Company to Jones, trustee. In making the loan and in taking the collateral security the bank was not guilty of any actual fraud. The warranty deed executed and delivered by the English Mining & Manufacturing Company to the Jackson Chemical Manufacturing Company, and the deed of trust from the latter to the former securing the notes pledged to the Sturdivant Bank, were not withheld from record in pursuance of any agreement or understanding between the Sturdivant Bank and the English Mining & Manufacturing Company or its successor, the Jackson Brick & Tile Company. The bank supposed that both instruments had been duly recorded.

There is no evidence or finding in the record that any creditor now objecting to the allowance of the claim of the bank as a secured claim ever examined the records for the purpose of ascertaining whether there were any incumbrances of record against the property now in controversy and extended credit to the Jackson Brick & Tile Company in reliance thereon. The creditor, Quinn, who asked and obtained leave to intervene in the proceeding brought by the referee in bankruptcy to establish the claim of the bank, had full knowledge of all the transactions of the Jackson Brick & Tile Company and its predecessor, the English Mining & Manufacturing Company. This knowledge not only appears from the record in this case, but this court found that the same existed in the case of McAtee v. Shade, 185 Fed. 443, 107 C. C. A. 512. As to the Whitewater Bank and John S. Medley, its cashier, the record fails to show that they, or either of them, ever presented or proved a claim against the bankrupt estate.

The land described in the trust deed on which the Sturdivant Bank claims its security is now in the possession of the United States District Court for the Eastern District of Missouri, through its referee and trustee in bank-

ruptcy. The bank was not a party to the withholding of the deeds from record by English, and was in no way benefited thereby.

R. B. Oliver (R. B. Oliver, Jr., and Allen L. Oliver, on the brief), for appellant.

T. D. Hines (A. P. Stewart and Moses Whybark, on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges.

CARLAND, Circuit Judge (after stating the facts as above). There seems to be some misapprehension on the part of counsel as to the questions of law which arise upon the facts stated. In order that the issues in the case may be understood, it is necessary to go back to the commencement thereof before the referee in bankruptcy. The Sturdivant Bank, in the way provided by law, sought to establish before the referee in bankruptcy its claim amounting to $15,410 against the estate of the Jackson Brick & Tile Company, a bankrupt. It claimed that this indebtedness arose upon the promissory note of the said Jackson Brick & Tile Company. It also claimed that it was a secured creditor by reason of the pledge to it of the collateral notes of the Jackson Chemical Manufacturing Company, which were secured by the deed of trust executed and delivered by the Jackson Chemical Manufacturing Company to the English Mining & Manufacturing Company, the predecessor of the Jackson Brick & Tile Company. The bank also asked that the land covered by the trust deed should be stricken from the schedule of assets belonging to the estate of the bankrupt. To the offer of the bank to prove its claim as a secured creditor, the trustee of the bankrupt objected to the allowance thereof for the following, among other, reasons:

"That the said bankrupt, being insolvent, within four months before the filing of the petition in bankruptcy herein, made the transfer of its property to the Jackson Chemical Company, which is mentioned in the proof of claim of said Sturdivant Bank, in that the said pretended deed from the English Mining & Manufacturing Company to the said Jackson Chemical Company, dated the 12th day of September, A. D. 1902, purporting to convey the real estate sought by said bank to be stricken from the schedule of assets, was not recorded nor filed for record in the county of Cape Girardeau, Mo., where said land lies, as is required by law in such cases, until within four months next before the filing of the petition in bankruptcy herein, and in that the said pretended mortgage or deed of trust which was executed to secure the collateral notes and mortgage described in the claimant's proof of its claim was not recorded nor filed for record in the county of Cape Girardeau, Mo., where said land lies, as is required by law in such cases, until within four months next before the filing of the petition herein. That the effect of the enforcement of the said pretended transfers would be to enable the said bank to obtain a greater percentage of its debt than of the other creditors of said bankrupt in the same class, and that both said pretended deed and said pretended deed of trust are void within the meaning of the bankrupt law. That the withholding of the deed aforesaid from the records in the county where the land included therein lies, for about four years, as was done by the said Sturdivant Bank, constituted a fraud in law against all creditors of said bankrupt, and gave said bankrupt a fictitious credit, enabling it to obtain credit for material purchased by it, and for labor employed by it, which said bankrupt could not possibly have done had said instruments been recorded at the date of their alleged execution. That the said Jackson Chemical Company never had any legal existence, nor was any charter ever issued by the state

195 F.—13

of Missouri, nor any other state, creating such a corporation, and in addition, if it did have such legal existence, it never had any assets or property of any kind, but was created solely for a fraudulent purpose. That it never transacted any business, and never owned or possessed a penny, except what in fact and in law was owned by said bankrupt, or the English Mining & Manufacturing Company. That the said conveyance and the said incumbrance were executed with the intent to hinder, delay or defraud the creditors of the bankrupt, or the English Mining & Manufacturing Company."

Upon the hearing before the referee the claim of the bank was allowed, but not as a secured claim. The prayer of the bank to have the land covered by the trust deed stricken from the schedule of assets was denied, and it was further decided that the conveyance from the English Mining & Manufacturing Company to the Jackson Chemical Manufacturing Company, as well as the trust deed executed by the latter to the former, were void. A petition for review of this order of the referee was filed, and the case subsequently came on for hearing before the United States District Court for the Eastern District of Missouri. That court, upon full hearing, affirmed the ruling of the referee upon the single ground that the trust deed, having remained unrecorded from December 4, 1902, until July, 1906, was constructively fraudulent under the laws and decisions of Missouri as to creditors who became such while said deed of trust was unrecorded.

The case is now brought here by the appellant bank, which alone appeals. In the District Court the bank made the contention that the referee in bankruptcy was without jurisdiction to decide as to the validity of the bank's security because the land in question did not belong to the bankrupt. The trial court overruled this objection upon the ground that the land was in the possession of the United States District Court for the Eastern District of Missouri, through its referee and trustee in bankruptcy, and that it had the right to determine the validity of any lien claimed against the property. This ruling of the trial court is one of the errors assigned, but it has neither been argued orally nor in brief, and therefore must be deemed abandoned. The only other error assigned is as to the ruling of the court holding the deed of trust constructively fraudulent as above stated.

[1] The trial court held that the Jackson Chemical Manufacturing Company was at least a de facto corporation, that it took title to the land in question under the deed from the English Mining & Manufacturing Company, and that it had the power to execute and deliver the trust deed. The bank does not complain of this ruling, and, as the trustee in bankruptcy did not appeal, he cannot be heard to complain of it. Therefore we adopt the ruling of the trial court upon this question without passing upon its merits. We do this without hesitation, for the reason that if it be conceded that the conveyance of the land in question by the English Mining & Manufacturing Company to the Jackson Chemical Manufacturing Company, and the execution and delivery of the deed of trust, was simply a paper transaction, then as a court of equity, looking at the substance of things and not their form, we should be obliged to determine that the transaction as shown by the record constituted an equitable mortgage in favor of the bank to the extent of the amount of the collateral notes pledged to it, and which the trust deed secured.

It must now be seen that the real controversy to be decided by this court arises between the trustee in bankruptcy who, under section 47a of the bankruptcy act as amended in 1910 (Act June 25, 1910, c. 412, § 8, 36 Stat. 840), as to all property in the custody or coming into the custody of the bankruptcy court, is deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and as to all property not in the custody of the bankruptcy court is deemed vested with all the rights, remedies, and powers of a judgment creditor holding a judgment execution duly returned unsatisfied, and the Sturdivant Bank, who claims a lien upon the land in question, created December 4, 1902.

[2] The pledge of the collateral notes to the bank in equity carried with them whatever interest the pledgor had in the trust deed which secured their payment. This, together with the delivery of the deed of trust to the bank, constituted an equitable assignment or transfer thereof.

[3] This transfer was accepted in good faith for a present consideration, and, as the court below found, is not subject to attack for actual fraud. It is not subject to attack, as being a voidable preference under section 60ab of the bankruptcy act, for the reason that the transfer was not made within four months from the time of the filing of the petition in bankruptcy. It is contended, however, by the trustee in bankruptcy that under the provisions of section 60a the four months did not commence to run until the trust deed was recorded on August 8, 1906. Bank v. Connett, 142 Fed. 33, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148.

[4] This contention develops a misconception of the question to be decided. The bank obtained no lien or interest in the land in controversy by the execution and delivery of the warranty deed or the execution and delivery of the trust deed. Whatever interest the bank obtained in the land was obtained by reason of the pledge of the collateral notes, and the delivery of the trust deed to it. The transfer which might be avoided under section 60ab of the bankruptcy act is the transfer from the English Mining & Manufacturing Company to the bank by the pledge of the notes and the delivery of the trust deed. This transfer never was in writing, and could not be recorded, and is not within section 2809, Revised Statutes of Missouri 1909, providing for the recording of any instrument in writing that conveys any real estate, or whereby any real estate may be affected. There being no written instrument evidencing the transfer from the English Mining & Manufacturing Company to the bank, there was nothing to record and nothing which the laws of Missouri require to be recorded. Therefore the transfer was actually made on December 4, 1902, and is now invulnerable to attack on the ground of its being a voidable preference. The trust deed did not evidence the transfer to the bank.

[5] While it thus appears that the transfer from the English Mining & Manufacturing Company to the bank may not be avoided as a preference, there are other provisions of the bankruptcy act which may avoid it by destroying the trust deed itself as against the trustee in bankruptcy, for the reason that the bank, in order to sustain the va-

lidity of its security, must show that the trust deed is valid; and those will now be considered.

Upon the facts stated we know of no provision in the bankruptcy act which would invalidate the trust deed, unless it be section 67a, which is as follows:

"Claims which for want of record or for other reasons would not have been valid liens as against the claims of creditors of the bankrupt shall not be liens as against his estate."

We must now, therefore, turn to the laws of Missouri and the decisions of her Supreme Court in order to determine whether the failure, under the facts in this case, to record the trust deed on the part of the bank, from December 4, 1902, to August 8, 1906, would render such instrument invalid as against the trustee. The statutes of Missouri in regard to the recording of instruments affecting real estate (sections 2809 and 2811, Revised Statutes of Missouri 1909) are as follows:

"Sec. 2809. Deeds, etc., to be Recorded.—Any instrument in writing that conveys any real estate, or whereby any real estate may be affected, in law or equity, proved or acknowledged and certified in the manner hereinbefore prescribed, shall be recorded in the office of the recorder of the county in which such real estate is situated."

"Sec. 2811. No such instrument in writing shall be valid except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder for record."

In Bank v. Connett, 142 Fed. 33, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148, and in Re Bothe, 173 Fed. 597, 97 C. C. A. 547, it was decided by this court that certain chattel mortgages were void as against general creditors who became such while the mortgages were unrecorded. This result was reached after an examination of the statute of Missouri regulating the recording of chattel mortgages, and the decisions of the Supreme Court of that state. It is claimed by the appellant that the law is otherwise in Missouri in relation to unrecorded instruments affecting real estate. Harrison v. Calhoun, 95 Mo. App. 80, 68 S. W. 963. Cases of the character now under discussion depend for correct decision upon the particular facts in each case.

In this case there was no agreement or understanding between the parties that the trust deed or the warranty deed should not be recorded. There is no evidence that any person not having knowledge of these instruments ever searched the records and extended credit to the Jackson Brick & Tile Company relying on the record. There is no evidence that any creditor now complaining was deceived by the withholding of the trust deed and warranty deed from record. The bank was not the grantee in the deed of trust or in the warranty deed, and the primary duty of recording same rested upon the grantees.

[6] The bank could have lawfully received a pledge of the collateral notes carrying with them the security without ever having seen the trust deed. The bank gave the trust deed to English with instructions to have it recorded, and the bank supposed it had been recorded. It was in the interest of the bank that the deeds should be recorded. It could gain no advantage and would be liable to suffer loss if the

same were withheld from record, hence when English, the president of the English Mining & Manufacturing Company, decided to withhold these deeds from record, he was not acting for the bank, but for and in the interest of the English Mining & Manufacturing Company, and adversely to every interest of the bank in the matter. Therefore, under a well-recognized rule of law, he ceased to be the agent of the bank, and his acts and knowledge are not to be chargeable to it. Hickman v. Green, 123 Mo. 165, 22 S. W. 455, 27 S. W. 440, 29 L. R. A. 39; Bank v. Lovett, 114 Mo. 519, 21 S. W. 825; Traber v. Hicks, 131 Mo. 180, 32 S. W. 1145.

[7] No legal duty rested upon the bank to see that the warranty deed from the English Mining & Manufacturing Company to the Jackson Chemical Manufacturing Company was recorded; hence, it cannot be charged with any negligence in regard to same.

[8] The trustee, being in possession of the real estate upon which the lien is claimed by virtue of section 47a of the bankruptcy act, must be deemed a creditor holding a lien thereon by legal or equitable proceedings. As early as 1851, in the case of Davis v. Owenby, 14 Mo. 170, 55 Am. Dec. 105, the Supreme Court of Missouri had occasion to construe the Revised Code of Missouri 1845, c. 32, § 42, which was in the same language as section 2811, Revised Statutes of Missouri 1909, hereinbefore quoted. It was decided in that case that a bona fide purchaser of property who has failed to record his deed until after judgment has been recorded against the vendor, but who records it prior to any sale under the judgment, can hold it against the person purchasing under the judgment. Ryland, J., in delivering the opinion of the court, said:

"The forty-second section, in declaring that no such instrument in writing shall be valid except between the parties thereto and such as shall have actual notice thereof, until deposited for record, is not designed to allow any person to dispute the validity of an unrecorded deed, unless he is interested in the title under the same grantor—a mere trespasser cannot dispute it—there must be a title for value, under the grantor, to admit of the question being raised. Now, it will be seen that a creditor, as such, is nowhere alluded to in the statute as a person who is affected by notice, or to whom notice is to be given, and it would plainly be useless to give actual notice of an unrecorded deed to a creditor with a view to affect the person who might afterwards become a purchaser under the judgment of the creditors. A creditor by obtaining a judgment acquires a lien that binds the estate of the defendant against any subsequent act of his, but he acquires no interest or estate in the property. A purchaser of the property under the judgment of the creditor is the first person who acquires an interest in the property, and is the person who is to be affected by notice either actual or constructive. If he has notice before he assumes the character of a purchaser, he vests his money in a speculation against the deed, and the judgment creditor takes the money upon his judgment. The recording of the deed before the purchase is notice to him. I exclude creditors altogether from the above statutes, believing that they were never intended to be embraced within their provisions."

This case was followed in Valentine v. Havener, 20 Mo. 133, and in Stillwell v. McDonald, 39 Mo. 282. In Potter v. McDowell, 43 Mo. 93, it was again followed, and Judge Baker, who delivered the opinion of the court, said:

"The deed of trust made to secure these notes was not recorded until the 17th day of July, 1858, more than three months after the property was at-

tached. The plaintiff's counsel insists that the attachment having been levied on the property before the deed of trust was recorded should take precedence of it; and we are asked to review the decisions of this court in the case of Davis v. Owenby, 14 Mo. 170, 55 Am. Dec. 105, and subsequent cases following the doctrine there laid down. In the above-named case the court decided that a bona fide purchaser of real estate who has failed to record his deed until after a judgment is obtained against the vendor, but who records it before a sale under the judgment, will hold it against a purchaser under the judgment. This decision was followed in the case of Valentine v. Havener, 20 Mo. 133, Judge Scott dissenting, and in the case of Stillwell v. McDonald, 39 Mo. 282, when the principle was applied to a judgment and sale in a suit by attachment. These decisions involve a construction of our statute relating to the conveyance of real property, and I think the rule laid down by them is contrary to the spirit and intention of the statute; but it has been so long acquiesced in as an established rule affecting the rights of property that it will not now be disturbed. It is more important that rules of law affecting the rights of property should be stable than wise."

In the case of Reed et al. v. Owenby, 44 Mo. 204, the same question was again before the court, and Wagner, J., said:

"The question is firmly settled in this state by two direct adjudications holding that an unrecorded deed is good against a judgment if recorded before an execution sale under the judgment. Davis v. Owenby, 14 Mo. 170, 55 Am. Dec. 105; Valentine v. Havener, 20 Mo. 133. The counsel for the plaintiffs admits these authorities are directly against him, but asks the court to review the question and determine the law otherwise. This we are not at liberty to do. The law has been settled for many years. It has become a rule of property, and titles have been vested on the strength of it. The stability of judicial decisions is of the utmost consequence, as on them reposes the security of property; and they are not to be tampered with to suit the views of different persons."

In Wilson v. Beckwith, 140 Mo. 359, 41 S. W. 985, the rule was again followed, also in Hord v. Harlan, 143 Mo. 469, 45 S. W. 274, and as late as the cases of Harrison Machine Works v. Bowers, 200 Mo. 219, 98 S. W. 770 (1906), and Clark v. Lewis, 215 Mo. 173, 114 S. W. 604 (1908), the rule was still adhered to.

[9] The rule announced in Davis v. Owenby, supra, so far as our inquiries are able to inform us, is still the law of Missouri. The Supreme Court has been asked on several occasions to change it, but that court has steadily refused to do so, for the reason, among others, that the same has become a rule of property. The rule is based upon a construction of the statute of Missouri, hence we have no other alternative than to follow such construction.

Appellee has cited the cases of Singer Manufacturing Company v. Stevens, 169 Mo. 1, 68 S. W. 903; Goldsby v. Johnson, 82 Mo. 602; Bank v. Buck, 123 Mo. 141, 27 S. W. 341; Bank v. Doran, 109 Mo. 40, 18 S. W. 836; Bank v. Rohrer, 138 Mo. 369, 39 S. W. 1047; Gentry v. Field, 143 Mo. 399, 45 S. W. 286. These cases have been carefully examined. They are not based upon the construction of any statute of Missouri, but are cases which have held unrecorded instruments affecting real estate fraudulent and void for reasons that do not exist in the present case. In other words, they all present cases where, in addition to withholding an instrument affecting real estate from the record, there was an additional element which

amounted to either actual or constructive fraud in connection with the failure to record.

[10] In this case, so far as the bank is concerned, which is the party contesting its right to a lien with the trustee in bankruptcy, no more can be said than that the bank failed to see that English did as he had promised. There is no evidence that it had any notice of the act of English in withholding the mortgage and deed from record, and we must find from the evidence that it supposed the mortgage had been recorded in accordance with its instruction.

As explained before, English, when he commenced to act adversely to the interest of the bank and for the interest of his company, ceased to be the agent of the bank, and his acts and knowledge of the transaction cannot be held to have been the acts and knowledge of the bank. The question then presented is, Is the equitable lien acquired by the bank on December 4, 1902, and followed by a record of the trust and warranty deeds August 8, 1906, superior to the right of the trustee in bankruptcy deemed to have a judgment lien created subsequent to the date last mentioned? Under the law and decisions of Missouri it would seem that there can be but one answer to this question: The trustee, not having sold the property to a purchaser before the deeds were placed of record, has no right superior to that of the bank. The decree of the District Court will therefore be reversed, with instruction to allow the claim of the bank as a secured claim and otherwise proceed in reference thereto as law and justice may require; and it is so ordered.