### In re DESNOYERS SHOE CO.

(District Court, S. D. Illinois, S. D. January 15, 1914.)

**1. BANKRUPTCY (§ 314*)—CLAIMS—CONSIDERATION.**

A bankrupt corporation, contemplating an increase in its capital, received $50,000 from claimant under an agreement with the bankrupt's president to pay dividends on the amount as on regular stock, to pay interest for the advancement, to give claimant's son a position and every legitimate opportunity to increase in knowledge in the business of the corporation, or such general business as came before the president of the corporation, and to issue stock to claimant therefor as soon as the increase should become effective. *Held*, that while the last element of the consideration the bankrupt could not bind itself to perform, the three other elements of consideration were within its power; and, the stock not having been increased prior to bankruptcy, and the valid part of the consideration being sufficient and substantial, the claimant was not entitled to prove his claim against the corporation's estate for the whole amount of the fund so advanced, on the theory that the whole contract was invalid for want of mutuality of obligation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*]

**2. BANKRUPTCY (§ 312*)—CORPORATIONS—STOCKHOLDER OR CREDITOR — ESTOPPEL.**

Claimant contributed $50,000 to a corporation under an agreement contemplating that it should issue stock therefor when the corporation's capital should be increased as contemplated, that in the meantime he should receive interest, and that it should also be entitled to dividends. After the payment a statement was sent out by the corporation to creditors, showing the amount paid in as an increase in capital, and claimant, though knowing that such statement would be used to enhance the bankrupt's credit, took no steps to prevent such use, but on the contrary held himself out as connected with the business. *Held* that, as to creditors relying on such conduct, he was estopped to claim that he was a creditor of the corporation and not a stockholder.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 496–500; Dec. Dig. § 312.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BANKRUPTCY (§ 245*)—RIGHTS OF TRUSTEE—SPECIAL CREDITORS—EQUITIES—ENFORCEMENT.

A bankrupt's trustee represents all persons interested in the estate, and may therefore enforce equitable rights in favor of certain creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 245.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Desnoyers Shoe Company. A claim of L. D. Dozier against the estate was allowed by the referee, and the question certified. Decision reversed.

Following is the referee's report:

I, E. S. Robinson, one of the referees of said court in bankruptcy, do hereby certify that in the course of the proceedings in said cause before me the following question arose pertinent to the said proceedings:

The question is on the allowance of claim filed by L. D. Dozier against the estate of bankrupt in the amount of $50,000, Dozier having agreed to subscribe for that amount of capital stock of bankrupt corporation upon said corporation increasing its capital stock from $300,000 to $500,000, and having advanced said $50,000 to the company upon that agreement, and said bankrupt corporation failing to increase its capital stock, bankruptcy intervening, and no stock ever having been issued to Dozier. The Desnoyers Shoe Company was an Illinois corporation. It operated shoe factories in Springfield and Belleville, Ill., and St. Louis, Mo. Springfield, Ill., was named as its principal place of business in its charter, but for about two years prior to bankruptcy its offices were located in St. Louis, and its business was conducted principally from there. Willis L. Desnoyers was the president of the corporation and its active manager, so much so that he managed and conducted it practically as his private business.

In the latter part of 1910 the company was somewhat in financial straits, and Desnoyers desired to obtain some more capital. The capital stock of the company was then $300,000. Lewis D. Dozier, of St. Louis, a man of means and retired from active business, in some way was informed that the company intended to increase its capital, and, having a son whom he wanted to establish in business, interviewed Desnoyers, with an idea of investing in the company, and at the same time placing his son in a position to learn the shoe manufacturing business. He was told by Desnoyers that the company wanted to increase its capital to $500,000, which would be done at the next annual meeting of the stockholders to be held in Springfield in July, 1911. After discussing the matter several times, it was agreed between Desnoyers and Dozier that Dozier was to take $50,000 of the proposed increase of capital stock, and that Dozier and his son were both to become directors of the company, and the son to be placed in the office of the company and given an opportunity to learn the shoe business. Upon this understanding Dozier, on January 23, 1911, advanced the company $50,000, and Desnoyers gave him the following document:

"Mr. L. D. Dozier, Sr., St. Louis, Mo.—Dear Sir: In accepting your check for fifty thousand ($50,000) dollars, receipt of which is hereby acknowledged, we wish to cover all the points of the agreement between us, of which your payment is the initial step.

"The $50,000 received from you and referred to above, is to become a part of the capital stock of the Desnoyers Shoe Company as soon after July 1st as we can legally arrange for an increase to our capital stock, the increase to be from the present $300,000.00 to $500,000.00 and to be all paid in in cash or its equivalent, except $50,000.00, which is to be carried for the account of the undersigned until such time as the dividends on same shall have paid for the principal, or until it shall be paid for in cash, or, in the event of my death, it shall become treasury stock for the company, with exception of such parts as have already been paid for in the manner outlined above.

"The $50,000.00 which you are now paying, it is understood, is to become special capital until such time as we are able to merge it into the general

capital stock in the manner outlined above, and it is to bear the same percentage of dividends as regular stock, beginning from the 1st of January; and, in addition to this, as a premium for prepayment, we will pay you 6 per cent. per annum for interest on the said amount from to-day until the 1st of July.

"It is further understood to become a part of this agreement, that if you or Lewis or both should desire to become officers and directors or both of this company, that such arrangements will be made.

"It is further understood that the writer is to give Mr. Lewis Dozier, Jr., every legitimate opportunity to increase in knowledge in the shoe business or such general business as comes before the writer.

"It is further understood that the salary basis under which I am now working will be changed after July 1st, and that, in lieu of the commission I have been getting, I shall receive a salary of $——— per year, as per my conversation with you.

"[Signed]          Desnoyers Shoe Company,
"[Signed]   W. L. Desnoyers."      "W. L. Desnoyers, President.

In accordance with said writing Desnoyers, as president of the company, paid Dozier $1,316.67 as interest from said date until July 1, 1911, on the $50,000 advanced, and young Dozier was given a position with the company. Dozier was given credit on the books of the company for $50,000. On June 27, 1911, Dozier was paid $516.67 as interest on said amount from July 1, 1911, to September 1, 1911. The capital stock of the company was not increased, and on July 21, 1911, an involuntary petition in bankruptcy was filed against the company, and it was adjudged bankrupt on August 1, 1911, and the Sangamon Loan & Trust Company, of Springfield, Ill., was appointed trustee of its estate.

Dozier filed his claim for $50,000 against the estate. Objections to the allowance of the claim was filed by the trustee, and also by American Hide & Leather Company, a creditor. I made an order allowing the claim in sum of $49,758.35, being the full amount after deducting the interest from August 1, to September 1, 1911, as provided by section 63a (1) of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447]). The trustee and American Hide & Leather Company thereupon filed petition for review by the court.

Considerable evidence has been taken on behalf of the objectors and claimants, and lengthy and elaborate briefs and arguments filed, but in my opinion, there is but one question, and that a question of fact, viz.: Is Dozier by his act or acts, or by his failure to do some act or acts incumbent on him, estopped from proving his claim and receiving dividends from the estate until the other creditors are paid the full amount of their claims? There can be no question but that he had a claim or debt good as against the corporation. That, I think is conceded; at any rate the authorities so hold. Winters v. Armstrong (C. C.) 37 Fed. 508; Laredo Imp. Co. v. Stevenson, 66 Fed. 633, 13 C. C. A. 661; Ross-Meehon Co. v. Southern Iron Co. (C. C.) 72 Fed. 959; Matthews v. Columbia Bank (C. C.) 79 Fed. 558; Wolf v. Chicago Sign Ptg. Co., 233 Ill. 501, 84 N. E. 614, 13 Ann. Cas. 369; Spring Co. v. Knowlton, 103 U. S. 49, 26 L. Ed. 347.

It is contended by the objectors that Desnoyers made statements showing the increase in the capital of the company and Dozier's connection with the same, and by such statements induced the American Hide & Leather Company and other creditors to extend credit to the company, and that Dozier permitted the same to be done, and is thereby estopped from proving his claim. In my judgment the proof is not sufficient to establish an estoppel. It is true that Desnoyers sought to use Dozier's name in connection with the company. Dozier was generally known as a man of wealth, who had retired from active business, and to have his name connected with the company was undoubtedly beneficial to the company and gave it a better standing for credit. Immediately after Dozier gave the check for $50,000 Desnoyers visited the Boatmen's Bank, of St. Louis, with which the company was doing business, and from which it was seeking to borrow more money, and exhibited the check to the officers of the bank and said that the company was going to increase

its capital stock, and that Dozier was going to invest in it. Before that time the bank had agreed to extend the company credit to the amount of $50,000, and Desnoyers was asking that it be increased to $100,000, which was afterwards done.

Desnoyers also gave out the following statement to commercial agencies and to certain creditors:

"Statement of the Desnoyers' Shoe Company.

"Assets.          "January 1st, 1911.

| | | |
|---|---:|---:|
| Real estate, machinery, etc. | | $230,913 61 |
| Bills receivable | | 2,600 00 |
| Accounts receivable | $88,712 33 | |
| Less doubtful | 800 00— | 87,912 33 |
| Inventories and prepaid items | | 250,941 67 |
| Cash (L. D. Dozier) | $50,000 00 | |
| Cash | 11,832 02— | 61,832 02 |
| | | $634,199 63 |

"Liabilities.

| | |
|---|---:|
| Accounts payable | $254,539 10 |
| Bills payable | 20,000 00 |
| | $274,539 10 |

"The real estate item consists of modern brick factory building in Springfield, Ill., with an area of 75,000 sq. feet of floor space all thoroughly sprinklered (insurance rate 15c per hundred dollars) having a frontage of 320 feet on a paved avenue, by 420 feet on the Wabash Railroad. This is not outlying property, but is well downtown and surrounded on all sides by the homes of working people.

"All the items as listed above were compiled by Price, Waterhouse & Company, and certified by them, except the item of cash listed as L. D. Dozier. This item represents an increase to our capital stock of $50,000 paid by Mr. Dozier of this city. This is to be special until the 1st of July, at which time it is the purpose of the company to increase its capital stock from $300,000.00 to $500,000.00 and this special capital will then become part of the general fund.          Desnoyers Shoe Company, W. L. Desnoyers, Pres."

This statement was in itself, to my mind, sufficient to put one about to advance or extend credit on inquiry as to Dozier's connection or relation with the company. So far as the evidence shows there was no different statement made by Desnoyers, and no statement of any kind was made by Dozier. No creditor took the trouble to make any kind of inquiry from Dozier or his son, except that Mr. Whitaker, president of the Boatmen's Bank, of St. Louis, on meeting Dozier in the washroom of the Noon Day Club, in St. Louis, shortly after Dozier's check for $50,000 was shown to him by Desnoyers, did say to Dozier: "Bud (the name by which Dozier was known to his friends), I see you are going into the shoe business?" To which Dozier replied: "Yes, I expect to put my boy in there and educate him in the business." There is nothing to show that Whitaker indicated to Dozier in any way that Desnoyers or the company was seeking to increase its credit at the Boatmen's Bank on the strength of Dozier's connection with the company, or that Dozier knew such to be the fact. It would appear to have been a casual remark by one to an acquaintance or friend, and a natural reply to such remark. The creditors seem to have assumed without inquiry that Dozier was connected with the company, and that his connection justified more liberal dealings with the company. It is possible that Desnoyers sought to convey that impression, even to the extent of deceiving the creditors without letting Dozier know of it. The testimony of Madison B. King, head salesman for the American Hide & Leather Company, the objecting creditor, would seem to show that fact. In his testimony he says that Desnoyers and young Dozier came to his office in Chicago in the early part of 1911; that Desnoyers introduced him to young Dozier and (quoting his language) "in an aside to me, which I do not believe young Dozier heard, he stated that he had interested Mr. Dozier, Jr.'s father

in the concern, and that young Dozier would henceforth enjoy a good position with him." If Dozier knew that his name was being used to help the credit of the company, I know of no reason why Desnoyers should not have made the statement referred to by King openly in the hearing of young Dozier. It is true that Dozier, Sr., was a visitor at the St. Louis office and factory, frequently took some interest in looking over the volume of business being done, and made some inquiry as to how the business was going, but that does not seem to be remarkable in view of the fact that he was intending to invest a large sum in the business and try and arrange for the future of his son. So far as I can find from testimony there is no evidence tending to show that Dozier had knowledge that his connection with the company was being used by Desnoyers, unless it is the testimony of Mr. Whitaker, and that is not strong enough to establish an estoppel. Reference is made to the fact that Dozier himself does not testify. That naturally excites some suspicion, but the sworn statements of Dr. W. H. Fischel and Dr. Gwin Campbell that Dozier was not in condition to testify explains his failure to testify, and must be accepted as true without proof to the contrary. When estoppel is relied upon the burden of proof is on one seeking to establish an estoppel, and must be established by clear and unequivocal evidence. Coal Belt Railway Co. v. Peabody Coal Co., 230 Ill. 164, 82 N. E. 627, 13 L. R. A. (N. S.) 1144, 120 Am. St. Rep. 282; Stanley v. Marshall, 206 Ill. 20 [69 N. E. 58]. The company being an Illinois corporation, the laws of Illinois control.

And upon the petition of the trustee and the American Hide & Leather Company, the said question is certified to the judge of said court for his opinion thereon.

Dated at Springfield, Ill., this 12th day of November, A. D. 1913.

Wilson, Warren & Child and O. S. Humphrey, of Springfield, Ill., for trustee.

Winston, Payne, Strawn & Shaw, of Chicago, Ill., and Patton & Patton, of Springfield, Ill., for American Hide & Leather Co.

Lehmann & Lehmann, of St. Louis, Mo., for Boatmen's Bank.

A. and J. F. Lee and Charles M. Polk, of St. Louis, Mo., for claimant.

SANBORN, District Judge. [1] The claimant, L. D. Dozier, filed his claim for money had and received, stating therein that the bankrupt solicited a subscription for 500 shares of the proposed increase of capital stock, and that claimant paid therefor $50,000; that the amount so paid became part of the general funds and property of the bankrupt, and was used by it in payment of its outstanding bills and current expenses from time to time; that the money was furnished as a payment in advance for a proposed stock increase; that the bankrupt paid to the claimant $1,316.67 and also $516.67 as payments in advance for interest on $50,000 paid in. It is further stated in the claim that it was agreed between claimant and the bankrupt that the latter would cause the increase of stock to be legally authorized, and stock certificates would be delivered to the claimant immediately after such authorization; that the president of the bankrupt informed the board of directors of said advance payment, and the terms under which it was made, and the board ratified and approved the action of the bankrupt in accepting such advance payment, and the bankrupt, with the knowledge and approval of the board, continued to retain the money so paid. The claim then states that no such proposed increase has been made, and that bankruptcy has occurred; that the $50,000 has never been repaid, and claimant has never become or acted as a stockholder, and has nev-

er received any consideration whatever for the payment, except the interest. Therefore it is claimed that the sum of $50,000 is legally due and owing to the claimant.

The claim was evidently made upon the theory of the case of Chicago Sign Painting Co. v. Wolf, 135 Ill. App. 366, affirmed 233 Ill. 501, 84 N. E. 614, 13 Ann. Cas. 369, and Railroad v. Sneed, 99 Tenn. 7, 41 S. W. 364, 47 S. W. 89. These cases hold that an agreement to pay or a payment for corporate stock to be increased at a future time affords no consideration for Dozier's payment, so far as the corporation is concerned, and that he could recover from it if no rights of creditors were involved.

The claim is presented upon the theory that there was no other consideration for the payment except a promise to deliver the stock when it should be increased, and, such agreement being void as to the corporation, and the latter being the bankrupt, claimant is entitled to file for his payment. It appears, however, from the agreement made between him and the president of the bankrupt that there were four elements to the consideration, being a promise to pay dividends as on regular stock, a promise to pay interest for the advances, a promise to give the claimant's son every legitimate opportunity to increase in knowledge in the shoe business, or such general business as came before the president of the company, and the issue of stock. The last element of consideration the bankrupt could not bind itself to perform, and upon this the claimant bases his whole right of recovery. The three other elements of consideration were within the power of the shoe company to perform, and they were being performed when bankruptcy occurred. The contract, therefore, was based upon a consideration partly valid and in course of performance, and partly invalid. The valid part was a sufficient and substantial consideration. Alderton v. Williams, 139 Mich. 296, 102 N. W. 753; Washburn v. Wilson, 48 N. Y. Super. Ct. 159; Pittsburg Stove Co. v. Pa. Stove Co., 208 Pa. 37, 57 Atl. 77; 9 Cyc. 370; Harris v. Tyson, 24 Pa. 347, 64 Am. Dec. 661; Jackson v. Jackson, 222 Ill. 46, 78 N. E. 19, 6 L. R. A. (N. S.) 785.

The claimant might have an action for a partial breach of the contract, and might have filed a claim under section 63b of the bankruptcy act for damages on account of such partial breach. He cannot, however, treat the contract as a whole as invalid, as he has done by filing a claim, and recover the money paid by him, on the ground of the want of mutuality of obligation. The referee should have disallowed the claim as a whole.

[2] It appears also from the record that after the money was paid by claimant the bankrupt gave wide publicity to the fact that the claimant had become connected with the shoe company. The claimant also frequently visited the office of the bankrupt, and attended directors' meetings. The money was intended to be used in the business of the company. It was to be permanently invested in the business, and the contract in question does not contemplate that the relation between the parties should be that of debtor and creditor. A statement was sent out by the bankrupt that the $50,000 paid in by the claimant represented an increase of the capital, and was to be special capital until July 1, 1911,

and it was the purpose of the company on that date to increase its capital, when the special capital would become part of the general funds. It does not appear that the claimant made any statement of his relation to the company, except to the officer of the Boatmen's Bank, as quoted in the referee's report. Claimant was a business man of large experience and wealth, and must have fully understood that his connection with the shoe company would be used to enhance its credit. The record shows that five of the creditors, the Boatmen's Bank, Pfister & Vogel, Gardner-Beardsell Company, Thayer-Foss Company, and the American Hide & Leather Co., relied upon the fact of the claimant's connection with the company in their dealings with it. I think that the claimant was held out to the creditors as having become connected with the company, and that he has so conducted himself in the whole transaction that he must be held to have authorized such holding ·out. The claimant is therefore estopped to urge his claim as to all creditors who relied upon such holding out.

[3] The point is made by counsel for the claimant that as only one of the creditors, the American Hide & Leather Co., has specially objected to the allowance of the claim, the estoppel, if any, should not operate in favor of any other creditors, and that the trustee does not represent a part only of the creditors, because he can enforce the common rights and claims of all creditors, and cannot plead or urge the personal claims of individual creditors which are not common to all. On this point claimant relies upon the dissenting opinion of Judge Sanborn in Scott v. Latimer, 89 Fed. 843, 33 C. C. A. 1, in the Eighth circuit. A contrary rule was laid down by the Court of Appeals of that circuit in the case of In re Bothe, 23 Am. Bankr. Rep. 151, 173 Fed. 597, 97 C. C. A. 547, and I think this rule should be followed in this matter.

The decision of the referee should be reversed.