John J. Mathews, Appellant, v. Daniel Danahy et al., Administrators, Respondents.

St. Louis Court of Appeals, June 2, 1887.

1. Contracts—Construction of—Practice.—The construction of a written instrument, whose terms are ambiguous, is for the court, unaided by expert testimony.

2. —— Interpretation by Parties.—The construction placed by the parties thereto, by their acts, upon any ambiguity in the terms of a contract, when taken in connection with the surrounding circumstances, will prevail when it is not wholly at variance with a correct legal interpretation.

Appeal from the Franklin County Circuit Court, A. J. Seay, Judge.

*Affirmed.*

J. W. Booth and Zach J. Mitchell, for the appellant.

John O'Day, E. D. Kenna, and Adiel Sherwood, for the respondents.

Lewis, P. J., delivered the opinion of the court.

The plaintiff was a sub-contractor under the defendants' intestate for the grading of a part of the St.

Louis & San Francisco Railway. The sub-contract contained the following stipulation concerning the plaintiff's compensation: "For excavation of earth from cuts only, including, if required, an extreme haul of one thousand feet, nineteen cents per cubic yard; and filling, in all cases, to be paid at fifteen cents per cubic yard for actual space filled, only." The only question for determination is, whether, in these provisions, the plaintiff was entitled to be paid fifteen cents per cubic yard for filling, in addition to nineteen cents for excavating, when the dirt used for filling was the same that was taken out and hauled from the excavation? The court, sitting as a jury, found that the pay for excavating, in such a case, was all that the plaintiff could lawfully claim, and gave judgment for the defendants.

Against the plaintiff's objections, a number of civil engineers were examined as experts, to establish the true meaning of the contract. One or more of them testified to the effect that the word, "filling," would be understood by engineers to mean an embankment made from "borrowed" dirt; that is, from dirt shoveled up from outside of the road bed, only. Others were of opinion that the sentence contemplated every filling or embankment, whether made from borrowed dirt, or from dirt hauled out from an excavation. The evidence thus drifted wholly away from the proper line of expert testimony, touching the application of technical terms peculiar to a trade or business, and became a mere series of criticisms on the interpretation of language in common use. Such analyses of the phraseology found in a written agreement belonged exclusively to the court. The so-called expert testimony, with its conflicts and disagreements, was altogether valueless, and should not have been considered for any purpose.

Looking at the nature of the contract and usages in universal acceptation with regard to such undertakings, as shown by the evidence, together with the compensation which the principal contractor was to receive

from the company, and other facts developed in testimony, and not apparent on the face of the agreement, there are very strong reasons for believing that the parties, when they entered into the contract, never for a moment thought of any such understanding as is here insisted upon by the plaintiff. It must be admitted, however, that if, excluding all other considerations, we confine ourselves to the literal meaning of the words used, it may be difficult to deny the plaintiff's interpretation of the undertaking. The filling, "*in all cases*," is to be paid for at fifteen cents per cubic yard. It was agreed by all the experts that the terms, *filling* and *embankment*, are synonymous. It is plain that such a structure made of material from an excavation, is as much a "case" of filling, as if made from material found any where else. Our difficulty is increased by a further provision of the contract immediately following the one in question : " All embankments shall be formed in layers of such thickness as the engineer in charge may prescribe, and be carried up full width, with outside always as high as the middle ; care being taken to place the material containing the greatest proportion of gravel or stone in the top dressing of the bank. Any injury to the embankments from floods or otherwise, before final completion and acceptance of the work by the engineer, shall be at the risk of the party of the first part" ( the plaintiff ). Here are specific duties, labors, and responsibilities assumed by the sub-contractor, which apply as well to embankments made from excavations, as to those constructed of "borrowed" dirt. It may be argued that these duties, labors, and responsibilities were something entirely separate from the work of excavation, and that they formed the basis for a special compensation, without any reference to the source of the material.

But, notwithstanding the tendency of these views in the plaintiff's favor, we are of opinion that the judgment of the circuit court was for the right party, and

ought not to be reversed. It was provided in the contract that monthly estimates should be made of the work done by the plaintiff, and that upon each estimate he should be paid ninety per cent. of the amount earned ; ten per cont. being reserved until the completion of the work. The uncontradicted testimony showed that these estimates were made for at least nine successive months, or during the whole time when the work was going on, and that the plaintiff, in every instance, acknowledged their correctness, and was paid ninety per cent. of the estimate, according to the contract ; that he always declared himself satisfied with the statements and the payments as made, and never demanded any addition to either, until some time after the completion of the work.

This was a clear case of interpretation by the parties themselves, shown by the acts on both sides, and agreed upon in the very performance of the contract. In *The St. Louis Gaslight Company v. The City of St. Louis* ( 46 Mo. 128 ), our supreme court said of an interpretation so manifested: "If the court gives one differing from that understood by the parties, it, in effect, makes a new agreement, the very thing most to be avoided. If it leaves the parties to be governed by their understanding of their own language, it, in effect, enforces the contract as actually made. That they should be so permitted to construe their own agreement, accords with every principle of reason and justice." It is conclusively shown, by a stipulation in the record, as well as by the whole case made for the plaintiff, that he has been paid for all the work done under the contract, leaving out what he now claims for fillings constructed from material hauled out of the excavation, and that the payments corresponded with the estimates furnished by the engineer.

The contract provides: "That all measurements made by the chief engineer, or his assistants, shall be considered and accepted as correct, full and final ; that the prices affixed shall be accepted as full consideration

for labor performed and materials furnished." It is
further provided : "That the chief engineer * * *
shall be the sole judge and arbiter in all cases of disagree-
ment, difficulty, or dispute as to the quality or amount
of work performed under the contract, and, also, in rela-
tion to all other matters of difference that may arise
between the parties hereto, in relation to, or touching,
the proper performance of any, or all, the conditions
thereof ; and his decision, given in writing, shall be in
the nature of an award, and the same shall be as con-
clusive upon, and between, the parties hereto, as a final
judgment in a court of competent jurisdiction, and no
appeal shall be taken, or suit instituted or prosecuted in
any court, to set aside or contest the same, or to re-ad-
just or question the validity or correctness of any
matter upon which he has passed." It is not pretended
that there was fraud, unfairness, or deceit in the esti-
mates furnished, and prices affixed, by the engineer, nor
is any other reason shown why the sub-contractor should
not be held to the letter of the first above recited pro-
vision; nor does it appear that the plaintiff ever at-
tempted to avail himself of the second provision, for the
correction of any supposed error in the estimates or
payments made.    We are unable to perceive any just or
reasonable ground upon which the plaintiff's present
claim should be sustained, to the effect of setting aside,
or ignoring, these plain provisions of his contract.

With the concurrence of all the judges, the judg-
ment is affirmed.