## METROPOLITAN NAT. BANK v. BENEDICT CO.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1896.)

No. 720.

1. CONTRACTS—SALE OR BAILMENT.

The S. Co. made a written contract with the B. Co. whereby it agreed "to realize, for consignment of ready-made clothing of B. Co., * * * net prices as per memorandum; * * * to keep the amount of the consignment * * * insured, * * * and that no part of the consignment shall remain unsold nor unpaid by February 1st, 1895. * * * " Shortly

afterwards the S. Co. made a bill of sale of all its stock of goods to the M. Bank, expressly excepting from the operation of such bill of sale goods held by the S. Co. on consignment for others. At the time of the making of such bill of sale the S. Co. notified the bank that the goods received from the B. Co. were held on consignment, and separated such goods from the others in its warehouse; but the bank took possession of such goods, and converted them to its use, whereupon the B. Co. sued it for their value. *Held*, that the contract between the S. Co. and the B. Co. was not a sale, but a contract of factorage, which passed no title to the S. Co. which could be transferred by its bill of sale.

2. SAME—INTERPRETATION BY PARTIES.

*Held*, further, that even if the meaning of the contract were doubtful, the parties to it agreeing in good faith as to its meaning and their rights under it, the bank could not insist that a different interpretation should be put upon the contract for its benefit.

In Error to the Circuit Court of the United States for the Western District of Missouri.

This cause was tried before the court, which made a special finding of facts. The facts material to the decision of the case in this court are as follows:

On the 19th day of October, 1894, the Stern Auction & Commission Company, a Missouri corporation engaged in business at Kansas City, Mo., and the Benedict Company, a Wisconsin corporation engaged in the manufacture and sale of ready-made clothing at Milwaukee, entered into the following contract:

"Kansas City, Mo., Oct. 19th, '94.

"In consideration of one dollar paid, we agree to realize for consignment of ready-made clothing of Benedict Company, as per memorandum received of Henry Benedict, president of the Benedict Company, net prices as per memorandum, without any charges of commission, freight, or any other charges. We agree to keep the amount of the consignment at all times, until the agreement expires, fully insured against fire or other damage, and that no part of the assignment shall remain unsold nor unpaid by February 1st, 1895. And we shall also be entitled, for any cash payment before Feb. 1st, 1895, 1½ (one and one-half) per cent. a month for any unexpired time. It is fully understood that there may be a little difference in the amount of quantity of each lot of garments, but the prices are fully and correctly established by the memorandum.                          Stern Auction & Commission Co.,
                          "M. Stern, Secty. and Treas."

The Stern Auction & Commission Company, becoming indebted to the Metropolitan National Bank of Kansas City, Mo., executed to the bank on the 7th day of November, 1894, the following bill of sale:

"For the consideration of twenty-five thousand five hundred dollars ($25,-500.00), the Stern Auction & Commission Company a corporation, hereby sells and conveys unto the Metropolitan National Bank of Kansas City, Missouri, its entire stock of goods and merchandise, of whatsoever kind or nature, whether specifically described or not, including all clothing, boots, shoes, furnishing goods, furniture, and all goods of all kinds, and also all of its furniture and fixtures, all of which property is in the building numbered 559 and 561 Main street, on the corner of Sixth and Main streets, in Kansas City, Jackson county, Missouri; but this conveyance does not transfer goods held for storage or on consignment for others. And the said Stern Auction & Commission Company hereby warrants the title to such property. In witness whereof the said party of the first part has caused its name to be signed and its corporate seal to be affixed hereto this 7th day of November, 1894.
                          "Stern Auction & Commission Co.,
                          "By M. Stern, Secty. and Treas."

During the negotiations which led up to the execution of this bill of sale, "Mr. Stern, of the Stern Auction & Commission Company, stated to Mr. Hocker, the president of the Metropolitan National Bank, before the bill of sale was executed, that he held in his house certain goods for storage for the sheriff

of Jackson county, Missouri, and that he also held in said house goods for sale on consignment. Among the latter were goods from the plaintiff, Benedict Company. In the course of this conversation Mr. Stern mentioned the fact that the Benedict goods were held under written contract, and thereupon Mr. Hocker remarked that the contract would determine whatever rights and interest the Stern Auction & Commission Company had in these goods; that, if the company held the goods as purchaser from the Benedict Company, the bank would get them under the bill of sale, and, if held on commission, they would not pass to the bank,—Mr. Hocker stating that he would submit the contract to the attorney of the bank for advice, when he should see the same." On account of the suggestion of Mr. Stern that there were goods in the house on storage, and for sale on commission, the words, "but this conveyance does not transfer goods held for storage or on consignment for others," were added to the bill of sale, after it had been prepared, but before it was executed. Before the terms of the bill of sale were agreed upon between the bank and the Stern Auction & Commission Company, the clerks in the house of the company, under direction from Mr. Stern, removed the goods held on storage, and other goods under commission, and the goods received from the Benedict Company remaining on hand, from the first and second floors of the building to the fourth floor thereof, and they were segregated from the other property in the store house. The bills of lading sent with these goods recited that the Benedict Company was the "consignor," and the Stern Auction & Commission Company the "consignee." The boxes containing the goods were marked to the Stern Company. The bank claimed and took possession, under its bill of sale, of the goods which had been consigned by the Benedict Company to the Stern Auction & Commission Company, and converted them to its own use, whereupon the Benedict Company brought this suit against the bank to recover the value of the goods. The lower court found the issues for the Benedict Company, and rendered judgment in its favor, against the bank, for the value of the goods, and the bank sued out this writ of error.

Edward P. Gates (Frank Hagerman was with him on the brief), 'or plaintiff in error.

Gerson B. Silverman filed brief for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The contract between the Benedict Company and the Stern Auction & Commission Company (hereafter called the "Commission Company") was not a sale, but a contract of factorage. The stipulations of the contract are not appropriate to a contract of sale. If it was a sale, and the commission company acquired the absolute title, what concern was it of the Benedict Company when they were sold? When one merchant sells goods to another, the seller never requires the buyer to enter into a covenant that he will sell the goods within a specified period. Such a requirement is inconsistent with the dominion over property which absolute ownership confers. The money to be paid by the commission company was not upon a sale of the goods to that company, but upon a sale of the goods by that company. The commission company was never to pay for the goods as upon a purchase by it, but only to account for the proceeds of the sale of them at prices fixed by the contract. The commission company covenanted that no part of the assignment [consignment] should "remain unsold nor unpaid by February 1st, 1895." A failure to sell the goods, and account for the same, at the prices fixed, within the time agreed upon, would be a breach of this covenant on

the part of the commission company, for which the Benedict Company might recover its damages, but such breach of the contract would not have the legal effect to convert the bailment into a sale. Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99; Hunt v. Wyman, 100 Mass. 198; Walker v. Butterick, 105 Mass. 237; Middleton v. Stone, 111 Pa. St. 589, 4 Atl. 523. The goods not sold would still remain the property of the Benedict Company. There is no provision in the contract for a change of title from the consignor to the consignee, in any event. Tested by the written agreement, the contract was clearly one of bailment. But, if its meaning was doubtful, the fact that the parties to it understood it to be a contract of bailment, and acted upon that assumption, would remove the doubt. Hamm v. City of San Francisco, 17 Fed. 119, 124; Chicago v. Sheldon, 9 Wall. 50, 54; Central Trust Co. of New York v. Wabash, St. L. & P. Ry. Co., 34 Fed. 254; Topliff v. Topliff, 122 U. S. 121, 127, 7 Sup. Ct. 1057; Steinbach v. Stewart, 11 Wall. 567, 576; Mathews v. Danahy, 26 Mo. App. 660; Jennings v. Machine Co., 138 Mass. 594; District of Columbia v. Gallaher, 124 U. S. 505, 8 Sup. Ct. 585; Knox Co. v. Ninth Nat. Bank, 147 U. S. 91, 13 Sup. Ct. 267.

Moreover, parties have the undoubted right to make their own contracts, and to put their own construction upon them, and to regulate their rights and liabilities thereunder. If the court "leaves the parties to be governed by their understanding of their own language, it, in effect, enforces the contract as actually made. That they should be so permitted to construe their own agreement accords with every principle of reason and justice." St. Louis Gaslight Co. v. City of St. Louis, 46 Mo. 128; Mathews v. Danahy, 26 Mo. App. 660. And when both parties to a contract, acting in good faith, are agreed as to its meaning and their rights under it, a stranger having no interest in the subject-matter of the contract cannot insist that a different interpretation shall be put upon it, or compel the parties to put that interpretation upon it which will benefit him. The law will not override the will of the parties in the construction of their own contracts, for the benefit of a third party, whose interests are not affected thereby, or who acquired his interest with full knowledge of what the parties conceded and agreed was their contract. The bank was advised by the commission company, before the execution of the bill of sale, that the goods in controversy were held for sale on commission from the Benedict Company; and thereupon, and before the bill of sale was executed, these words were added thereto, "but this conveyance does not transfer goods held for storage or on consignment for others;" and before the execution of the bill of sale the Benedict goods were separated from the goods of the commission company, and removed to an upper floor, and placed with other goods stored or held for sale on commission. It is true, the president of the bank, upon being told that the contract between the Benedict Company and the commission company was in writing, said he "would submit the contract to the attorney of the bank for advice, when he should see the same." But the parties to this contract had a right to put their own construction upon it, and act upon that construction, so long as it was done in good faith, and without prejudice

to the rights of the bank. The bank was distinctly advised, before it acquired any pretense of right or claim to these goods, that they were held on consignment, and the consignor was named. The bank never at any time extended credit, or did any act whatever, on the faith that these goods were the property of the commission company; but, on the contrary, it took its bill of sale with notice that they were the property of the Benedict Company. The parties to the contract agreeing as to what they meant by it, and as to their respective rights under it, and desiring in good faith to execute it in accordance with that understanding, the bank, with notice of these facts, cannot demand that the contract shall be construed contrary to the understanding and agreement of the parties, and to the prejudice of one of them. This is not a case where the parties to the contract themselves differ as to its meaning and purpose. Here the parties are agreed that the contract they made was one of bailment. It is a third party who is demanding that the contract shall not have effect according to the agreement and intention of the parties. On this state of facts, the bill of sale invested the bank with the rights of the commission company only; and, as the commission company had no right to the property, the bank has none. The judgment of the circuit court is affirmed.