BIG FOUR IMPLEMENT CO. et al. v. WRIGHT.

(Circuit Court of Appeals, Eighth Circuit. August 4, 1913.)

No. 3,889.

1. FRAUDULENT CONVEYANCES (§ 299*)—EVIDENCE—WITHHOLDING FROM REC-
ORD—CONDITIONAL SALES.

The mere failure to file contracts of conditional sale for record, al-
though they are required to be filed by statute to be valid against sub-
sequent purchasers and certain classes of creditors, is not sufficient to
show fraudulent intent.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§
876–890; Dec. Dig. § 299.*]

2. SALES (§ 474*) — CONDITIONAL SALES — EFFECT OF FAILURE TO FILE CON-
TRACT.

Under the law of Kansas, the failure to file a contract of conditional
sale for record does not render it invalid as against general creditors
without lien.

[Ed. Note.—For other cases, see Sales Cent. Dig. §§ 1391–1402; Dec. Dig.
§ 474.*]

3. BANKRUPTCY (§ 152*)—LIEN OF TRUSTEE—DATE.

The lien conferred on a bankrupt's trustee by Bankr. Act July 1, 1898,
c. 541, § 47a (2), 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), as amended
by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (U. S. Comp. St. Supp. 1911,
p. 1500), dates from the time of the bankruptcy proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 194; Dec. Dig.
§ 152.*]

4. BANKRUPTCY (§ 161*)—PREFERENCE—"CONDITIONAL SALE" CONTRACTS—FIL-
ING WITHIN FOUR MONTHS.

Under the general law and also the statutes of Kansas (Gen. St. 1909,
§§ 5224–5226, 5237), there is a clear distinction between a contract of
"conditional sale" by which the seller retains title until full payment,
with the right to take possession at any time, and contracts of sale by
which the title is passed and a chattel mortgage for the purchase money
taken back, and a contract of conditional sale, although made before, but
not filed as provided by the Kansas statute until within four months
prior to the bankruptcy of the purchaser, does not constitute a prefer-
ence.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263;
Dec. Dig. § 161.*

For other definitions, see Words and Phrases, vol. 2, pp. 1408–1410.]

Appeal from the District Court of the United States for the Dis-
trict of Kansas; John C. Pollock, Judge.

In the matter of one Bell, bankrupt; Isom Wright, trustee. The
Big Four Implement Company and the Kansas Moline Plow Company
appeal from orders denying their petitions for reclamation of prop-
erty. Reversed.

Samuel Feller, of Kansas City, Mo., for appellants.

William Osmond and Elrick C. Cole, both of Great Bend, Kan., for
appellee.

Before SANBORN and CARLAND, Circuit Judges, and WIL-
LARD, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WILLARD, District Judge. In this controversy between the Big Four Implement Company and the Kansas Moline Plow Company on the one hand, and Wright, the trustee of Bell, the bankrupt, on the other, the court below held that the appellants were not entitled to a return to them of certain farm implements received by the bankrupt on conditional sale contracts. The contract between the Plow Company and Bell was made on January 23, 1911, and filed in the proper register's office on November 11, 1911. The contract between the Implement Company and Bell was made on December 8, 1910, and was filed on November 9, 1911.

Within three or four days after the filing of the contracts Bell made a trust deed for the benefit of his creditors of all his property, except that covered by these contracts. A petition in bankruptcy was filed against him on February 22, 1912, and he was adjudicated a bankrupt on March 19, 1912. Some of the property delivered under these contracts came into the possession of his trustee. Appellants appeared in the bankruptcy proceeding and asked for a return to them of such property. The two cases were consolidated in the court below. The referee refused to grant the petition of the claimants, the court affirmed this ruling, and they have appealed.

[1] The trustee claims that these contracts were fraudulent in fact, because "there was an understanding between the bankrupt and the interveners that they were not to be filed unless necessary for interveners' interests, and that the bankrupt would see that they received notice in time to protect themselves." That the mere failure to file the contracts is not sufficient to show fraudulent intent cannot be doubted. The evidence shows the following additional facts: While the contracts were made in December and January, none of the goods of the Plow Company were shipped until March, and most of those of the Implement Company not until June. The bankrupt, being pressed by the German-American Bank, one of his creditors, for security, went to Kansas City, it seems, about November 11, 1911, and saw the agents of the appellants. He then told the agent of the Implement Company that he could not meet his obligations. At that time he had no talk whatever with the Plow Company about the filing of their contract. The agent of the Implement Company, however, suggested or spoke of the fact that they would file their contract. The property here in question was expressly excluded from the trust deed made on November 15th. Bell had dealt with these companies before under similar contracts, which had not been filed, and had settled with them according to their terms. This is all of the evidence tending to show any agreement on the part of the companies to withhold the contracts from record, and it is in our opinion entirely insufficient to establish their fraudulent character.

[2] Some of Bell's creditors became such after the making and before the filing of these contracts. No one of them had, however, at the time of such filing, obtained any specific lien upon the property here involved. Under the law of Kansas relating to the filing of chattel mortgages, the protection given to creditors by the law requiring such filing was intended to include only those having some specific

lien upon or right to the mortgaged property, and not mere general creditors. Youngberg v. Walsh, 72 Kan. 220, 83 Pac. 972; Geiser Mfg. Co. v. Murray, 84 Kan. 450, 114 Pac. 1046. The statute requiring the filing of chattel mortgages is in this respect the same as that requiring the filing of conditional sale contracts, and the same rule must apply to the latter. This case is thus distinguished therefore from Re Wade (D. C.) 185 Fed. 664, and First National Bank v. Connett, 142 Fed. 33, 73 C. C. A. 219, 5 L. R. A. (N. S.) 148, both of which cases arose in Missouri.

Prior to 1910 the trustee stood in no better condition than the bankrupt, and these contracts would have been valid as to him, even though never recorded. It is said, however, by the trustee, that this condition has been changed by the amendment of section 47a of the Bankrupt Act made in 1910. That amendment is as follows:

"And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

[3] This amendment must speak as of the time of the bankruptcy. The lien which the trustee is considered as holding must be a lien attaching as of that date. There can be no ground for saying that the lien is in existence before the bankruptcy. No case has been cited which so holds. In most of the cases referred to by the trustee the contract was never filed. In Rock Island Plow Company v. Reardon, 222 U. S. 354, 32 Sup. Ct. 164, 56 L. Ed. 231, the contract was not filed, yet the vendor had taken possession of the property covered by it before the bankruptcy. It appeared, however, in that case, that prior to that possession by the vendor another creditor had secured a lien by execution, which lien was preserved by the trustee for the benefit of the creditors. There is no authority for holding that a trustee can, in his own right, avoid such contracts as these when they have been filed before the bankruptcy. The decisions are to the contrary. Keeble v. John Deere Plow Co., 190 Fed. 1019, 111 C. C. A. 668 (5th Cir.). Part of the opinion of the court below in this case is found in Re Jacobson & Perrill (D. C.) 29 Am. Bankr. Rep. 603, 200 Fed. 812; Re Farmers Co-operative Co. (D. C.) 202 Fed. 1005; Hart v. Emmerson-Brantingham Co. (D. C.) 203 Fed. 60. In Sturtivant Bank v. Schade, 195 Fed. 188, 115 C. C. A. 140 (8th Cir.), it appeared that a deed was made in 1902 and not recorded until August 8, 1906. A petition in bankruptcy was filed on October 8, 1906, and an adjudication had on October 31, 1906. The trustee came into possession of the real estate covered by the deed. The court considered that any judgment lien which the trustee was deemed to have was created subsequent to August 8, 1906. It is not necessary to determine whether, under the amendment of 1910, the lien of the trustee attached on the filing of the petition, or on the date of the adjudication, because the filing of the papers in this case preceded both dates.

[4] The trustee claims also that the transaction constitutes a preference, saying that these contracts are, under the laws of Kansas,

nothing more than chattel mortgages, and, not having been filed until within four months of the bankruptcy, they must be set aside on that ground. Mattley v. Geisler, 187 Fed. 970, 110 C. C. A. 90 (8th Cir.). But they are not instruments of that character. They are in the usual form of conditional sale contracts of farm machinery. The Implement Company's contract contains this clause:

"It is also agreed that the title to and ownership of, and the right to the immediate and exclusive possession, upon demand either oral or written, of all goods which may be shipped as herein provided, or during the current season, shall remain in, and their proceeds in case of sale, shall be the absolute property of the Big Four Implement Company and subject to their order until full payment shall have been made for the same by the purchaser in money. In case the Big Four Implement Company shall take possession of any property as provided for in this contract, they or their agent shall have the right to sell the same at public or private sale, with or without notice and at such place as they or their agent may deem best, and the proceeds arising from such sale, after paying the expenses of the same, shall be applied to the payment of the indebtedness due to said Big Four· Implement Company. The appraisement of said property to be sold is hereby waived, but nothing in this clause will release the purchaser from making payment as herein, agreed."

The Plow Company's contract contains this clause:

"It is understood and agreed that the goods sold under this contract may be resold by said party of the second part only in the ordinary course of trade at retail, and that the title to and ownership of all said goods, until sold, in the manner aforesaid permitted together with the proceeds of those sold shall be and remain in the party of the first part and subject to its order until full payment in cash shall have been made by the second party for said goods, or of said notes, and until any judgment rendered therefor or thereon shall be paid in full."

There are no other provisions in either contract limiting these clauses. They are, therefore, under the rule in force in this circuit, conditional sale agreements. Dunlop v. Mercer, 156 Fed. 545, 86 C. C. A. 435 (8th Cir.) ; In re Pierce, 157 Fed. 755, 87 C. C. A. 537 (8th Cir.) ; Monitor Drill Co. v. Mercer, 163 Fed. 943, 90 C. C. A. 303, 20 L. R. A. (N. S.) 1065, 16 Ann. Cas. 214 (8th Cir.) ; Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285 ; Bryant v. Swofford Bros., 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997. Are they conditional sale contracts under the laws of Kansas? The trustee says that they are not. He relies for that statement upon a single case, Christie v. Scott, 77 Kan. 257, 94 Pac. 214. It was there said:

"At least since the enactment of section 4257 of the General Statutes of 1901, providing for the recording of such notes and contracts as chattel mortgages, these contracts should be regarded as on the same basis as chattel mortgages. Indeed the transaction, reserving the title and right of possession and right to retake the property, is intended and operates simply as a security for the debt. The transaction does not essentially differ from one in which the seller, at the time of making a sale, takes a promissory note for the purchase price, and at the same time, and before he has really transferred the property sold, takes a mortgage thereon to secure the payment of the note—the purchase price. Under the law of this state such a mortgage conveys the title and right of possession to the mortgagee. In the one case the purchaser agrees unconditionally to pay a certain stated sum as the purchase price, and agrees that the seller shall hold the title to the property and right of possession until the debt is paid, and, if it be not paid, that the seller may take the property and sell it and apply the proceeds of the sale towards

the payment of the note, implying that the proceeds may be less than the amount of the note. In the other case the purchaser executes a promissory note and unconditionally promises thereby to pay the purchase price, and, before he has actually received the property purchased, conveys the title and right of possession thereof to the seller, and further agrees that the seller may take possession of the property and sell it and apply the proceeds, less the expenses, toward the payment of the note. There is a theoretical distinction between the two transactions, but no practical difference."

The only question which the court *decided* in that case was that a vendee in a conditional sale contract was liable on his promissory notes, although the creditor had retaken the property. The court said:

"Authorities are cited from several states which hold that, where the contract attached to a note shows the seller retained the title and right of possession of the property until payment was made, and took possession of the property under the contract, the consideration for the note thereby failed and he cannot recover upon the note. The contract in this case, however, goes further and provides that the seller may take possession of the property, remove and sell the same, and apply the proceeds toward the payment of the note, less the expense of such removal and sale. This is a plain recognition of the obligation to pay the note after the taking of the property."

It also said on page 262 of 77 Kan. (94 Pac. 215):

"In the case at bar the purchaser may have had full consideration in the use of the articles purchased for the balance remaining unpaid on his notes. Under the contract attached to these notes, we hold that the plaintiff was authorized to take the property and sell it and apply the proceeds toward the payment of the notes, and that by so doing the law does not imply a revocation of the contract of sale, nor does the law imply that there remains no consideration for the payment of the balance due on the notes."

Conditional sale contracts have long been recognized in the law of Kansas. They were valid as to third persons, when there was no statute requiring them to be filed, while there was a statute requiring the filing of chattel mortgages. Sumner v. McFarlan, 15 Kan. 600; Hall v. Draper, 20 Kan. 137; Standard Implement Co. v. Parlen & Orendorff Co., 51 Kan. 544, 33 Pac. 360; Moline Plow Co. v. Witham, 52 Kan. 185, 34 Pac. 751. The statutes of Kansas recognize the difference between a chattel mortgage and a conditional sale contract, by providing separate and different provisions for filing. The provision relating to chattel mortgages is found in section 5224 of the Compilation of 1909. Section 5237 relating to conditional sales is as follows:

"No. 5237. Sale Notes. No. 44. That any and all instruments in writing or promissory notes now in existence or hereafter executed evidencing the conditional sales of personal property, and that retain the title to the same in the vendor until the purchase price is paid in full, shall be void as against innocent purchasers, or the creditors of the vendee, unless the original instrument, or a true copy thereof, shall have been deposited in the office of the register of deeds of the county wherein the property shall be kept, and shall be entered upon the records of the same as a chattel mortgage, and when so deposited shall remain in full force and effect until the amount of the same is fully paid, without the renewal of the same by the vendor; and any conditional verbal sale of personal property reserving to the vendor any title in the property shall be void as to creditors and innocent purchasers for value."

Section 5226 requires a chattel mortgage to be renewed every two years. Section 5237, as is seen, provides that the effect of the filing

shall continue, without renewal, until payment. Section 5232 provides for a public sale after notice under a chattel mortgage. There is no provision for such sale in the case of conditional sale contracts. The Supreme Court of Kansas did not, in our opinion, intend to hold in the case of Christie v. Scott that conditional sale contracts could not exist under the law of Kansas. So far as the effects of filing are concerned, they are similar to chattel mortgages; and this was all that was meant by what was said by this court in National Bank of Commerce v. Carbondale Machine Co., 195 Fed. 180, 115 C. C. A. 132.

These being contracts of conditional sale, there is no foundation for the claim that the filing of them within four months of the bankruptcy constituted a preference. There could be no preference without a transfer by the bankrupt of his property. If there were any transfer in this case it is evidenced by these instruments dated December 8, 1910, and January 23, 1911. But they transferred no property of Bell. They expressly refrained from transferring any to him. Re Farmers' Co-operative Co. (D. C.) 202 Fed. 1005. In Hall v. Draper, 20 Kan. 137, it was said by Judge Brewer:

"In this respect such a conditional sale differs from an absolute sale with a mortgage back. In such case the vendee has everything, except as limited by the terms of the mortgage; here he has nothing except as expressed in his contract."

The orders of the court below are reversed, and the case is remanded, with directions to grant the petitions of the appellants.