### ELLET-KENDALL SHOE CO. v. MARTIN.

(Circuit Court of Appeals, Eighth Circuit.   March 26, 1915.)

#### No. 4135.

**1. SALES ⬥8—CONTRACT—INTENTION OF PARTIES—CONSIGNMENT FOR SALE.**

Whether a contract under which a stock of shoes was shipped was a sale, or merely a consignment for sale, must be determined from the terms of the contract, the test being whether the specific goods were to be returned if not sold, or another thing of value might be returned instead.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 18, 19; Dec. Dig. ⬥8.]

**2. SALES ⬥46—FRAUD—MISREPRESENTATION OF FACTS.**

Where the buyer of a stock of shoes gave the seller a financial statement from which an indebtedness of $5,500 was omitted, the seller could rescind the sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 95; Dec. Dig. ⬥46.]

**3. SALES ⬥89—CONTRACTS—RIGHTS OF PARTIES—MODIFICATION.**

The parties to a contract for the sale of goods on credit may, before the acceptance of the goods, change their contract so as to make it a consignment for sale, and the creditors of the consignee acquire no interest in the goods so shipped.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 251, 252, 259; Dec. Dig. ⬥89.]

**4. BANKRUPTCY ⬥159—PREFERENCES—CONSIGNMENT FOR SALE.**

A contract for the consignment of goods for sale is not a preference to the consignor, which is avoided by the bankruptcy of the consignee less than four months thereafter, since there can be no preference under the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544) where there is neither debtor nor creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248, 262, 268–281; Dec. Dig. ⬥159.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Intervention by the Ellet-Kendall Shoe Company in bankruptcy proceedings, wherein W. S. Martin was trustee in bankruptcy, to require the trustee to deliver to the intervener certain goods in the bank-

---

rupt's possession. Decree for the trustee, and the intervener appeals. Reversed, with directions to allow the claim of intervener to the goods.

E. S. Ellis, of Kansas City, Mo. (C: F. Hutchings and Frank W. Yale, both of Kansas City, Mo., on the brief), for appellant.

W. S. McClintock, of Topeka, Kan. (A. L. Quant, of Topeka, Kan., on the brief), for appellee.

Before SANBORN, Circuit Judge, and TRIEBER and REED, District Judges.

REED, District Judge. Brown and Norris, a copartnership doing a general merchandise business at Osage City, Kan., and the individual members thereof, were adjudicated involuntary bankrupts August 16, 1913, upon petition filed July 21st preceding, and W. S. Martin, the appellee, was thereafter duly appointed trustee in bankruptcy of their estates and qualified as such. The Ellet-Kendall Shoe Company, a corporation, which will be called the petitioner, in due time filed with the referee its petition claiming that certain shoes in the possession of the trustee, and claimed by him as a part of the bankrupt stock of merchandise, was the property of the petitioner, which it had consigned to the bankrupts in June, 1913, for sale on commission and which remained unsold at the time of the bankruptcy, and asked an order that the trustee be required to deliver to the petitioner such goods as its property. The trustee denied the claim of the petitioner and alleged that the shoes were bought outright by the bankrupts from the petitioner on credit and were a part of the bankrupts' estate at the time of the bankruptcy; or, if not so bought, the transaction between the petitioner and the bankrupts whereby said goods were consigned to the bankrupts amounted to a preference under the Bankruptcy Act. Upon a hearing the referee denied the claim of the petitioner, and adjudged the shoes to be a part of the bankrupt estate. On petition for review this order of the referee was approved by the District Court, and the petitioner appeals.

The proofs show without substantial dispute that on June 5, 1913, a traveling salesman of the Ellet-Kendall Shoe Company, a manufacturer and jobber of boots, shoes, and rubber goods at Kansas City, Mo., took from the bankrupts at Osage City, Kan., a verbal order for 73 dozen pairs of shoes of different sizes described by stock numbers and of the invoice value of $1,713 to be shipped at once by the petitioners from Kansas City to the bankrupts by rail, terms of payment one-half by November 1st, and the balance by December 1st following. On the same day the bankrupts gave to the salesman a statement in writing of their financial condition as a basis for obtaining credit, which statement showed their assets, including a homestead, to be $18,700, subject to a mortgage upon the homestead of $2,000, and liabilities for merchandise, $4,975, $200 of which was due at bank in 30 days; other liabilities, none. The next day, June 6th, the bankrupts wrote the petitioner as follows:

"Osage City, Kansas, June 6, 1913.

"Ellitt Kendall Shoe Co., Kansas City, Mo.—Gentlemen: After taking into consideration the purchase of Shoes we made of you yesterday. We have de-

cided that at this time And us being new here, And fixed Financially the way we are, That we bought two many Shoes. And we would ask you to Cancil this Order.

"We hope in the near future we may be able to Buy your line of Shoes. But at the present time we feel like that it will be impossible for us to handle them.

    "Resp. Yours,                                          Brown & Norris."

On the morning of June 7th, the salesman of the petitioner at Kansas City wrote the bankrupts a letter, the material parts of which are:

                                              "June 7, 1913.

"Brown & Norris, Osage City, Kans.—Gentlemen: On my arrival in the house this morning I found your letter in regard to not shipping your bill of goods that I sold you Thursday. I am somewhat surprised to receive it.

"However, your order left the house here Friday afternoon. I sent the order in Thursday night and it was packed and shipped out Friday, and no doubt you will receive it sometime today. * * *

"Your order was shipped complete with the exception of the Children's High Cuts 5's to 8's also four dozen of Child's shoes, 2's to 5's and 5's to 8's in fancy patent leather, also one Doz. of Child's G. M. Btn. sizes from 8½ to 12's in Goodyear Welt. All of the balance of the order was filled. These few items will go forward to you just as soon as we receive them from the factory. Do not let your financial condition worry you any with this shoe bill, as the proposition in the way I made it to you will be the easiest bill of goods you will ever pay in the shoe business if you stay in the business 50 years. Wishing you all kinds of success, and whenever you are in need of anything in our line let me know in regard to it and I will send it to you so as to keep your line in good shape for your fall shoe business.

    "Yours truly,                                · Ellet-Kendall Shoe Co.,
                                          "W. E. McNaughton."

A few days later there were delivered to the bankrupts at Osage City several boxes of shoes from the petitioner via the Atchison, Topeka & Santa Fé Railway Company; and by mail they received an invoice from the petitioner dated June 7th, which corresponds with the shoes ordered, except that the invoice was short some 10 dozen pairs of shoes, which the petitioner did not have in stock, to be forwarded later, and there was substituted for 1 dozen pairs of the shoes ordered a different lot, but of the same value. The bankrupts did not open the boxes when received, and on June 12th went to Kansas City for a conference with the petitioner. At this conference after considerable discussion it was finally agreed between the bankrupts and the petitioner that the order of June 5th should be rescinded by the bankrupts because the goods shipped did not conform to the goods ordered, and because they had countermanded the order on June 6th; and by the petitioner because the financial statement made by the bankrupts as a basis for the credit was not correct (the bankrupts then informing the petitioner that they had omitted therefrom $5,500 of their indebtedness at the time it was made), and that the order would not have been accepted or the goods shipped had it known that the statement was not correct. Upon that date the bankrupts signed a letter to the Ellet-Kendall Shoe Company in the office of that company as follows:

                              "Kansas City, Mo., June 12, 1913.'

"Ellet-Kendall Shoe Company, Kansas City, Mo.—Gentlemen: Referring to your invoice of June 7th, total amount $1,713.40, we will return these invoices to you to be exchanged for consigned invoices, as we cannot accept the goods

on any other terms than as a consignment. We carry insurance on our general stock and we will see that our insurance policy reads to cover consigned goods.

"Yours truly,                                                    Brown & Norris."

It was thereupon agreed that the goods should be kept by the bankrupts for sale on commission to be paid for as sold. This agreement was reduced to writing, dated June 7th, and reads in this way:

"Whereas, Ellet-Kendall Shoe Company are consigning boots and shoes to Brown & Norris, located at Osage City, Kansas, said Brown & Norris hereby agree to guarantee the sale of all such consignments made at the net marked prices named in the bills, without expense to Ellet-Kendall Shoe Company. That said Brown & Norris also agree to keep said stock insured and that any unsold merchandise which may in the future be necessary to take back, or which Brown & Norris may return to Ellet-Kendall Shoe Company, said Brown & Norris agree to make a loss on said goods in the return of same of (30%) thirty per cent. of the original cost. Said Brown & Norris further agree to make weekly reports to Ellet-Kendall Shoe Company showing the articles and lot numbers that have been sold, and accompany said reports with check covering payment of goods that have been sold. Brown & Norris further agree to energetically and diligently push the sale of these consigned goods. It is further agreed that this consigned account shall be fully settled and accounted for in six months from this date, or a final settlement shall be made in less time than six months if it can conveniently be done.

"Ellet-Kendall Shoe Co.,
"By T. C. Ellet, Pres.
"Brown & Norris,
"By I. F. Brown.

"Kansas City, Mo., June 7th, 1913."

This contract was never recorded or filed for record.

Pursuant to this agreement the bankrupts returned to Osage City, unboxed the goods previously received, and placed them in their store in the cartons or cases in which each pair of shoes was contained, and labeled with the petitioner's name and made sales therefrom from time to time for which they remitted to the petitioner on June 14th, 30th and July 22d statements of sales to those dates, respectively, and checks or drafts for the amount thereof which were duly paid, amounting to some $75. On July 19th the bankrupts made a general assignment for the benefit of their creditors, but did not include therein the remaining shoes received from the petitioner, and they remained in the store when the bankruptcy proceeding was commenced. It is admitted that the shoes were later identified as shoes received from the petitioner under the order of June 5th, and finally accepted by the bankrupts pursuant to the agreement of June 12th. Upon these facts the referee and court held that the contract of June 12th, was in effect, but a confirmation of the purchase of goods by the bankrupts under the order of June 5th, and that the petitioner was not entitled to the shoes unsold at the time the bankruptcy proceeding was commenced.

[1] Prior to the amendment of the Bankruptcy Act of June 25, 1910, the trustee in bankruptcy would have succeeded only to the rights of the bankrupts under the local law to these shoes. See Holt v. Henley, 232 U. S. 637, 34 Sup. Ct. 459, 58 L. Ed. 767; Big Four Implement Co. v. Wright, 207 Fed. 535, 125 C. C. A. 577, 47 L. R.

A. (N. S.) 1223. Counsel have not discussed, either at the bar or in the briefs, the effect, if any, of that amendment to section 47a (2) of the Bankruptcy Act, which vests in the trustee, "all the rights of a creditor holding a lien by legal or equitable proceedings upon the property in the custody of the court of bankruptcy," but counsel for appellee apparently concede that if the transaction of June 12th was in effect a consignment of the shoes by the petitioner to the bankrupts for sale on commission, the petitioner would be entitled to recover the shoes not sold at the time of the bankruptcy, or their proceeds if sold by the trustee (see In re Lane Lumber Co., 217 Fed. 550, 133 C. C. A. 402, and Holt v. Henley, 232 U. S. 637, 34 Sup. Ct. 459, 58 L. Ed. 767, above), and it is contended in behalf of the trustee that the contract of June 12th is a confirmation of the transaction of June 5th, and in effect but a completed sale of the shoes on credit to the bankrupts. This must be determined from the terms of that contract. Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093; Metropolitan Nat. Bank v. Benedict, 74 Fed. 182, 185, 20 C. C. A. 377. In Sturm v. Boker, above, the Supreme Court, at page 329 of 150 U. S., at page 104 of 14 Sup. Ct. (37 L. Ed. 1093), says:

"The recognized distinction between bailment and sale is that when the identical article is to be returned in the same or in some altered form, the contract is one of bailment, and the title to the property is not changed. On the other hand, when there is no obligation to return the specific article, and the receiver is at liberty to return another thing of value, he becomes a debtor to make the return, and the title to the property is changed; the transaction is a sale. * * * The agency to sell and return the proceeds, or the specific goods if not sold, stands upon precisely the same footing, and does not involve a change of title. An essential incident to trust property is that the trustee or bailee can never make use of it for his own benefit. Nor can it be subjected by his creditors to the payment of his debts."

This rule is followed by this court in Metropolitan National Bank v. Benedict, above. See, also, In re Franklin Co., 199 Fed. 1, 117 C. C. A. 577, reversing (D. C.) 187 Fed. 281.

[2] The financial statement of the bankrupts upon which they were to and did first obtain the goods from the petitioner upon credit was false in material particulars and gave to the petitioner the right to rescind the transaction of June 5th. Ellet-Kendall Shoe Co. v. Ward, 187 Fed. 982, 110 C. C. A. 320. It did so rescind that transaction immediately upon learning of the falsity of the statement, and at once made the contract of June 12th.

[3] But whether the petitioner had the right to rescind the transaction of June 5th or not, the goods had not been accepted by the bankrupts, and they remained in their store in the boxes in which they were received unopened. No adverse right to the property had then attached, and the situation of the parties with reference thereto remained unchanged. The parties then had the undoubted right by their mutual agreement to change the transaction of June 5th, and make another agreement satisfactory to themselves. They made such an agreement, which is essentially a contract for the consignment of the goods to the bankrupts for sale on commission, and both parties acted upon it prior and up to the bankruptcy as being such a consignment upon

the terms specified in that agreement. It should not now be held a contract of sale and purchase of the goods for the benefit of the general creditors of the bankrupts, unless its terms imperatively require that it be so held. In Metropolitan Nat. Bank v. Benedict Co., above, Judge Caldwell speaking for this court of a similar contract said, at page 185 of 74 Fed., at page 379 of 20 C. C. A.:

"Moreover, parties have the undoubted right to make their own contracts, and to put their own construction upon them, and to regulate their rights and liabilities thereunder. If the court 'leaves the parties to be governed by their understanding of their own language, it, in effect, enforces the contract as actually made. That they should be so permitted to construe, their own agreement accords with every principle of reason and justice.' * * * And when both parties to a contract, acting in good faith, are agreed as to its meaning and their rights under it, a stranger having no interest in the subject-matter of the contract cannot insist that a different interpretation shall be put upon it, or compel the parties to put that interpretation upon it, which will benefit him. * * * This is not a case where the parties to the contract themselves differ as to its meaning and purpose. Here the parties are agreed that the contract they made was one of bailment. It is a third party who is demanding that the contract shall not have effect according to the agreement and intention of the parties. On this state of facts, the bill of sale invested the bank with the rights of the commission company only; and, as the commission company had no right to the property, the bank has none."

These decisions are controlling upon this court in the absence of some statute of the state of Kansas. That there is no such statute is clear, we think, from the following decisions of the Supreme Court of that state bearing upon the question: Powell v. Wallace, 44 Kan. 659, 25 Pac. 42; McKinney v. Grant, 76 Kan. 779, 93 Pac. 180; Van Arsdale v. Baldwin Piano Co., 90 Kan. 347, 133 Pac. 703.

Powell v. Wallace, 44 Kan. 659, 25 Pac. 42, above, is much like the case before us upon its facts. In that case Wallace & Co. were engaged in the wholesale boot and shoe trade in Kansas City, Mo. They brought suit against Powell to recover possession of a bill of boots and shoes, which they claimed had been consigned by them to one Myers, who was engaged in the boot and shoe business at Eureka, Kan., to be sold by him at retail, Wallace & Co. to hold title to the same, except those sold in the usual course of retail trade, until February 15th, when they would be paid for or the specific goods returned to Wallace & Co. as consignors. Upon receipt of the goods Myers placed them in his store with other goods owned by him, where they remained, except such as were sold in the usual course at retail, until January 27th, when the entire stock was sold to Powell, who took possession thereof. Wallace & Co. recovered judgment for the unsold shoes upon the ground that they had consigned them to Myers for sale upon commission, and that the title to the shoes, except those sold in the usual course of retail trade by Myers, remained in them. In affirming the judgment of the district court, the Supreme Court said:

"The evidence of the plaintiffs below [Wallace & Co.] was to the effect that the goods were consigned to Myers. The invoice of the bill of goods reads: 'Consigned by Wallace & Co. to Myers.' It is true that it also contained a memorandum, 'Sold by Berry,' but this only indicated the salesman who took the order. The letters of October 29th and 31st also indicated that the goods

had been consigned to Myers. * * * The word 'consigned' has a well-defined legal meaning. 'To consign, in the mercantile law, is ordinarily, to send or transmit the goods to a merchant or factor for sale; and a consignee is consequently the person to whom they are consigned, shipped, or otherwise transmitted.' * * * Consigned implies agency. Rolker v. Insurance Co., 42 N. Y. 17."

To the same effect is Sturm v. Boker, 150 U. S. above, 326, 327, 14 Sup. Ct. 99, 37 L. Ed. 1093. The other Kansas cases are to the same effect, and hold under the law of Kansas, as it is generally held elsewhere, that a consignee of property for sale on commission acquires no title to the unsold property received under such contract that a purchaser from, or creditor of, the consignee, can hold as against the consignor; also that such a consignment contract need not be filed for record or recorded in the proper registry office to save the rights of the consignor in and to the consigned property. See Big Four Implement Co. v. Wright, 207 Fed. 535, 539, 125 C. C. A. 577, 47 L. R. A. (N. S.) 1223.

[4] The contention of the appellee that the transaction of June 12th, amounts to a preference in favor of the petitioner is without merit. There was no debt owing by the bankrupts to the petitioner for the unsold shoes; and there can be no preference under the Bankruptcy Act where there is neither debtor nor creditor. Big Four Implement Co. v. Wright, 207 Fed. 539, 540, 125 C. C. A. 577, 47 L. R. A. (N. S.) 1223.

The contention of the appellee cannot, we think, rightly be upheld. The referee and court erred, therefore, in denying the claim of the petitioner to the shoes in controversy. The decree of the District Court is reversed, and the case remanded to that court, with directions to allow the claim of the petitioner to the shoes; or, if they shall have been sold by the trustee, to award to the petitioner the value thereof. It is ordered accordingly.

Reversed.